UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THOMAS HARTMANN,

                              Plaintiff,

          Docket No.: 04 CV 1784 (ILG) (CLP)

        -against-

THE COUNTY OF NASSAU, NASSAU
COUNTY POLICE DEPARTMENT,
POLICE OFFICER KARL N. SNELDERS,
POLICE OFFICER MICHAEL KNATZ,
DEPUTY INSPECTOR ROBERT TURK,
LIEUTENANT THOMAS ZAMOJCIN,
POLICE OFFICER "JOHN" SMITH,
POLICE OFFICER "JOHN" BRADY,
DETECTIVE BARRY O. FRANKLIN,
POLICE OFFICER THOMAS O. McCAFFREY
and "JOHN and JANE DOES 1-15" representing
as yet unknown and unidentified police officers.

                              Defendants.
------------------------------------------------------------------------x

# PLAINTIFF THOMAS HARTMANN'S MEMORANDUM
# OF LAW IN SUPPORT OF MOTION TO AMEND COMPLAINT

Daniel J. Hansen, Esq.
Attorney for the Plaintiff Thomas Hartmann
233Broadway, Fifth Floor
New York, NY 10279
(212) 697-3701

**Preliminary Statement**

Plaintiff Thomas Hartmann respectfully submits this memorandum of law in support of his motion for leave to amend the complaint to clarify that the 42 U.S.C. §1983 claims against defendant Nassau County Police Officer Carl Snelders are asserted in his official and individual capacity. The motion should be granted because there is no prejudice to the defendant Snelders since the proposed amendment is meritorious, there are already individual capacity claims asserted against him (including a claim for punitive damages) and there is no prejudice to defendant Snelders traceable to the amendment of the complaint at this time especially since discovery is still being conducted and the fact that the statute of limitations on the individual capacity §1983 claim has not run.

**Background of Complaint**

Plaintiff Thomas Hartmann commenced this action alleging claims under 42 U.S.C. §1983 and state law claims against the defendants arising out of an incident that occurred on March 12, 2004, when Nassau County police officer Karl N. Snelders intentionally drove his unmarked police vehicle striking and then running over Mr. Hartmann's legs during the course of a pursuit. The amended complaint contains five claims: (1) an excessive-force claim against all defendants, (2) a <u>Monnell</u> claim asserted against all defendants, (3) a state law negligence claim against the defendant Karl N. Snelders individually, (4) a state law claim against defendant Karl N. Snelders individually, and (5) a state law battery claim against defendant Karl N. Snelders individually (see amended complaint annexed hereto as Exhibit 1).

By this motion, the plaintiff also seeks to make clear the civil rights claims under 42 U.S.C. §1983 against Karl N. Snelders are brought not only against defendant Snelders in his official capacity (as indicated in the caption), but also in his individual capacity as is indicated in the substantive allegations of the claims alleged in the complaint where defendant Snelders is named

individually (see proposed second amended complaint annexed hereto as Exhibit 2). The only change to the proposed amended complaint is the highlighted language at paragraph 3 wherein defendant Snelders is expressly sued in his individual capacity.

**Factual Background**

The facts surrounding the use of deadly force against Mr. Hartmann are in sharp dispute. Defendant officer Snelders contends (in sworn statements and at deposition) that he used his radio motor patrol (RMP) car number 921 as an instrument of deadly force to intentionally strike and run over Mr. Hartmann in order to "terminate his approach" towards the RMP in the roadway on Allen Avenue in Oceanside during the pursuit predicated on misdemeanor charges.

By sharp contrast, Mr. Hartmann asserts that all physical proof and the eyewitness testimony establish that he was not "approaching" Snelders' RMP since he was running directly away from the RMP. This "running away" is conclusively established by the fact that he was not hit in the roadway on Allen Avenue, but was intentionally run over from behind after the RMP mounted a curb, drove across a grassy median, and then struck Mr. Hartmann from behind while he was facing away for the RMP on the sidewalk and lawn in the direction of neighboring houses.

*Defendant Officer Snelder's Version of the Events*

On March 12, 2004, the defendant police officer Karl N. Snelders, was a Nassau County police officer assigned to the "Bureau of Special Operations" (BSO) (see transcript from the deposition of the defendant Karl N. Snelders annexed hereto as Exhibit 3 at pp.5,17 (hereinafter "Snelders dep. p.__"). At the time, defendant Snelders was armed with a 9mm pistol on his right hip and had a shotgun in the trunk of RMP 921 (Snelders dep. pp. 113). Defendant officer Snelders is

known by his fellow officers as "The Hammer" (Snelders dep. pp 97-99).

On the morning of March 12th, defendant Snelders reported to duty at the 7th Police precinct and was given the assignment to locate and arrest Mr. Hartmann based upon possible information that Mr. Hartmann had verbally threatened his wife and a police officer on the telephone some time during the prior evening (Snelders dep., pp94-97). Defendant Snelders did not know the specific facts underlying the reason for the arrest of Mr. Hartmann, but he did know that the potential charges to be filed against Mr. Hartmann were misdemeanors (Snelders dep. pp. 102-103).

At some point during the day on March 12th, defendant Snelders received information that Mr. Hartmann may be present at a location on Brower Avenue in Oceanside (Snelders dep. pp107-108). On his way to the Brower Avenue location, at about 3:00 to 3:30 p.m., defendant Snelders picked-up another BSO officer, defendant Michael Knatz, and both rode together in an unmarked blue Chevy Lumina assigned RMP (radio motor patrol) number 921 (Snelders dep. pp. 107-109). After sitting in RMP with defendant Knatz parked at the Brower Avenue location for between 30 to 45 minutes, defendant Snelders saw what he believed to be the SUV being operated by Mr. Hartmann approach from the rear, pass RMP 921, and make a left turn onto an adjacent street and a come to a stop approximately 500 feet from RMP 921 (Snelders dep. pp, 111-115).

As Mr. Hartmann's SUV passed RMP 921, defendant Snelders put the RMP into drive, placed a red light on the dash, and followed Mr. Hartmann's vehicle around the corner and, when the RMP was approximately 25 feet from Mr. Hartmann's SUV, saw Mr. Hartmann get out of the SUV and walk towards the rear of the SUV (Snelders dep. pp. 121-124). According to defendant Snelders, Mr. Hartmann then exited his SUV and began walking towards the rear of the SUV all while defendant Snelders continued forward in RMP 921 (Snelders dep. 124-127). Defendant Snelders then claims that as Mr. Hartmann was only 10 feet away, Mr. Hartmann reached into his

waistband (Snelders dep. pp. 128-129).  Defendant Snelders, however, did not see anything in Mr. Hartman's waistband, did not see any bulge in his pants, and did not see the outline or silhouette of any object in Mr. Hartmann's pants, and did not see any objects in either of Mr. Hartmann's hands (id.).

Defendant Snelders testified that, although there was no physical indication or any weapon or other object, he believed that Mr. Hartmann was reaching for a gun in his pants and that Mr. Hartmann, who was unarmed and displayed not even a toy mock weapon, purportedly said "you better shoot me before I shoot you". (Snelder's dep. p. 129,133).  Further, although defendant Snelders stated he believed that Mr. Hartmann was reaching for a gun, defendant officer Snelders did not reach for any weapons and did not upholster the 9mm pistol that was on his waistband (Snelders dep. pp.129-131).

As defendant Snelders remained stopped in RMP 921 approximately 10 feet from the Hartmann SUV, Mr. Hartmann turned back and ran back to the driver's door and got into the SUV (Snelders dep. pp. 135-137).  Despite the claim by defendant Snelders that he "believed" that Mr. Hartmann had a gun, defendant Snelders (with his 9mm still holstered) claims that he "very slowly" drove RMP 921 alongside the Hartmann SUV (Snelders dep. pp. 136-139).  Defendant Snelders then claims, incredibly, that while securely seat-belted in the RMP that he could see clearly out of the passenger's side window of the RMP and into the driver's-side window of the large SUV and could see across Mr. Hartmann's body to his right shoulder and could see his hand movements in the SUV (Snelders dep. pp. 139-141).  Despite the claim that he felt threatened, neither defendant Snelders nor Katz made any radio transmission of any threats or ever requested assistance from other officers (Snelders dep. pp. 145-147).

After the RMP pulled alongside the Hartmann SUV, Hartmann drove off and defendant

Snelder's began a pursuit (Snelder's dep. pp. 147-149). Despite the claims of threats, there was no radio broadcast made by either Snelders or Katz indicating the supposed belief that Mr. Hartmann had a gun or other weapon or even that threats were even made at Brower Avenue or any other point in time (Snelders dep. pp. 149-150).

After a brief pursuit, the Hartmann SUV turned onto Allan Avenue and stopped with the front of the SUV near and angled toward the right-hand curb (Snelders dep. pp. 152-154). Defendant Snelders described Allan Avenue as a residential neighborhood with a curb, grassy area, and a sidewalk in front of homes (Snelders dep. p. 154). While on Allen Avenue, according to defendant Snelders, Mr. Hartmann exited his SUV and approached the driver's side window of RMP 921 where Snelder's was sitting and supposedly repeated his verbal threats and placed his hand into his waistband (Snelders dep. pp. 156-158). Despite the claim that Mr. Hartmann was only two to three feet from Mr. Hartmann (Snelders dep. p. 158), Snelders did not see any indication of any weapon— no bulge, silhouette, or anything in Mr. Hartmann's hand (Snelders dep. p159).

According to defendant Snelders, Mr. Hartmann then went back towards his SUV (away from Snelders RMP) (Snelders dep. pp. 161-162). In response, despite the supposed threats, defendant Snelders put his RMP in drive (never accessing his still holstered 9mm handgun) and drive RMP 921 "real slow" toward Mr. Hartmann (Snelders dep. p.162). Defendant Snelders then claimed that Mr. Hartmann went back towards the front of his parked SUV (away from RMP 921) again reached into his waistband and, when he supposedly pulled his hand out of his pants, defendant Snelders gunned his engine and cut the wheel to the right and, traveling eight miles per hour (Snelders dep. p.174), hit Mr. Hartmann with the right front quarter panel of RMP 921 near the front wheel (Snelders dep. pp.165-168).

As for his intentions, defendant Snelders testified:

> Q.     Was it your intention to hit Mr. Hartmann with the car?
>
> A.     Yes, it was.
>
>                 *     *     *
>
> Q.     Did you hit him intentionally?
>
> A.     Yes.

Snelders dep. p. 171.

Defendant Snelders testified that he hit Mr. Hartmann from the front and, most importantly, that Mr. Hartmann went "immediately" down after he was struck in the roadway. (Snelders dep. p.172). After he ran over Mr. Hartmann, defendant Snelders continued past the front of the SUV, onto the curb, and in an arc coming to rest on the front lawn facing westbound in front of one of the homes on Allan (RMP was initially heading east on Allen before striking Hartmann) (Snelders dep. pp.173-178).

Most significantly, despite Snelders' claim that he struck Mr. Hartmann inn front of the SUV in the roadway, and despite the fact that Snelder's testified that Mr. Hartmann went "immediately" down as a result of being struck, Mr. Hartmann's was left lying bleeding on the sidewalk and lawn area after being run over (Snelders dep. p.179,194-196; see also photograph identified and marked by defendant Snelders with an "x" for the location where Mr. Hartmann was found after being run over annexed hereto as Exhibits 12 & 13).

Defendant Snelders explained that the measurements and locations of the forgoing event were recorded on the crime scene diagram prepared on the evening of the incident (Snelders dep. p.173, 187-191; see also crime scene diagram annexed hereto as Exhibit 10).  As set forth below, the crime scene diagram prepared on the evening of the incident is at complete odds with defendant Snelder's deposition testimony.

After intentionally hitting Mr. Hartmann, Mr. Hartmann was arrested and charged with, among other things, menacing by a "District Court Information" sworn out by defendant Snelders. The District Court information is likewise at odds with defendant Snelders deposition testimony in that in the Court document defendant Snelders swears not that Mr. Hartmann was backing away or coming out of a crouch as Snelders testified, but rather that he hit Mr. Hartmann to "terminate his approach." (Snelders dep. pp. 218-222; see also District Court Information annexed hereto as Exhibit 11).

After Mr. Hartmann was run over, Mr. Hartmann was searched, the scene was searched, and his SUV was searched (Hartmann dep. pp.236-237). No weapon was found (id.).

### *Plaintiff Thomas Hartmann's Testimony*

Plaintiff Mr. Hartmann's Testimony Mr. Hartmann's version of the March 12th incident is more straightforward than defendant Snelder's version, and also comports with all of the physical proof and the eyewitness account. As for the encounter at Brower Avenue, Mr. Hartmann testified that he pulled his SUV alongside the curb and began to get out and, when he saw the defendant officers approach, he jumped back into the SUV and took off, all without any supposed threats or any other confrontation (see transcript from the deposition of plaintiff Thomas Hartmann annexed hereto as Exhibit 4 at pp. 101-105 (hereinafter "Hartmann dep. p.__").

Mr. Hartmann similarly described the events at Allen Avenue as him moving **away** from the defendant officers. After a short pursuit through Oceanside, Mr. Hartmann stopped his SUV on Allen Avenue, exited the vehicle, and ran to and around the front of the SUV and toward the sidewalk and lawns toward the nearby houses (Hartmann dep. pp.107-124). As he reached and was on the curb at the lawn and sidewalk, while still running away, he was struck and run over from

behind (id.).  During the course of his running directly away from the defendant officers, Mr. Hartmann made no threats nor did he place his hands in his pants; rather, he was running in the opposite direction of the defendants away from them and onto the sidewalk and law where he was struck, knocked down, and then run over (id.).

### *The Testimony of Eyewitness Jamie Florio*

Jamie Florio, an eyewitness to the events at Allen Avenue, gave deposition testimony that largely contradicts the account of the incident given by defendant Snelders but is consistent with the account of Mr. Hartmann.  Miss Florio, who lives at home with her father (a police officer), mother, and brother (also a police officer) on Allen Avenue where the incident occurred, testified at deposition that she was home on the evening of the incident in her second floor bedroom (located in the front of her house facing Allen) when she heard the screech of tires (see transcript from the deposition of Jamie Florio annexed hereto as Exhibit 5 at pp. 1-7,17-18,41 (hereinafter "Florio dep. at p.__").  Upon hearing this noise, Miss Florio looked out her bedroom window and also heard voices but did not hear any threats, did not hear anybody identifying themselves as police officers, and heard no reference to any guns or threats to shoot or being shot (Florio dep. pp.17-24).

Directly contrary to the testimony of defendant Snelders, Jamie Florio testified that the RMP struck Mr. Hartmann when he was "on the lawn"—not the roadway as defendant Snelders repeatedly testified. (Florio dep.pp.24,41).

Remarkably, Jamie Florio gave a written statement to an investigating Nassau County Sergeant, John DeMartinis, but this Sergeant's supervisor, detective Lieutenant Schoepp, made the calculated (and illegal) decision not to provide the statement to the District Attorney's office because the account of Miss Floio did not support the claims and charges filed by defendant Snelders:

> Q. Who ultimately or who was responsible for making that decision not to send Mrs. Florio's statement to the District Attorney's Office?
>
> A. Detective Lieutenant Schoepp.
>
> Q. What was the basis for that decision?
>
> A. The arrest was already commenced. There were no specifics in the statement related to supporting the charge of menacing. As such, Detective Lieutenant Schoepp felt it did not have to go to the District Attorney's Office.

See transcript from the deposition of John DeMartinis annexed hereto as Exhibit 6 at p. 51.

### *Plaintiff's Accident Reconstruction Expert George Ruotolo*

That defendant Snelders struck and ran over Mr. Hartmann from behind while he was on the sidewalk is further confirmed by the plaintiff's accident reconstruction expert George Ruotolo. Mr. Ruotolo, a former long-time instructor of accident reconstruction for the New York State Division of Criminal Justice and published author in the field of accident reconstruction, states that all of the physical evidence and his reconstruction of the accident confirms RMP 921 was used as an instrument of deadly force to strike and run over Mr. Hartmann who was in a non-threatening position of retreat from the officer **on the sidewalk** in front of 454 Allen Avenue. This analysis and conclusion is supported by, among other things detailed in the supporting affidavit of Mr. Ruotolo annexed hereto as Exhibit 7, the crime scene photos show a large blood stain located on the sidewalk several feet from the roadway establishing that Mr. Hartmann was in a position of retreat on the sidewalk when defendant officer Snelders drove the vehicle up the curb and struck and ran over Mr. Hartmann (see photo annexed hereto as Exhibit 12).

### *Forensic Pathologist Lone Thanning, MD*

That Mr. Hartmann was struck from behind wile moving **away** from defendant Snelders is also confirmed by Lone Thanning, MD, a forensic pathologist and the current Chief Medical Examiner for Rockland County. Dr. Thanning, who examined Mr. Hartmann's medical records and x-rays and other films, determined that based upon the pattern of injury and the patterns of the fractures to Mr. Hartmann's legs, that he was hit from the right side (from behind) as he was in a running position. See report of Lone Thanning, MD, annexed hereto as Exhibit 8.

### *Police Procedures Expert Dep. Inspector (Ret.) Timothy Sheahan*

Finally, that Snelders' use of deadly physical force was excessive and unjustified in his attempt to apprehend the fleeing, unarmed Mr. Hartmann for unproven misdemeanor charges was in violation of Mr. Hartmann's rights and in violation of New York State Penal Law, and Nassau County Police Department rules and procedures, is established by retired Deputy Inspector Timothy Sheahan (see report of Timothy Sheahan annexed hereto as Exhibit 9.)

## AGRUMENT

Leave to amend a complaint "shall be freely given when justice so requires" Fed.R.Civ.Pro. 15(a). A motion to amend should be denied only for such reasons as prejudice, bad faith, or futility. Forman v. Davis, 371 U.S. 178 (1962); Block v. First Blood. Assoc., 988 F.2d 230, 234-35 (2nd Cir. 1993).

### There is No "Undue Prejudice" or Bad Faith

In assessing undue prejudice in the context of considering a motion for leave to amend, the Second Circuit in Block considered "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii)

significantly delay the resolution of the dispute; or (iii) prevent the [opponent] from bringing a timely action in another jurisdiction." Block, supra, 988 F.2d at 350.

The proposed amendment here would not require the defendant to expend any additional resources to conduct discovery or prepare for trial.  Defendant Snelders would not have to conduct **any** additional discovery as a result of the amendment of the complaint since the proposed amendment contains no new factual allegations or claims—only the purely legal claim that defendants Snelders is responsible under §1983.  No further or additional depositions would be required due to the amendment since the depositions of all fact witnesses have already been completed. No further documentary discovery would be needed by reason of the amendment since merely clarifying that defendant Snelders is individually liable under §1983 does not trigger then need for the exchange of additional or different documents or other materials.

And the defendant Snelders would not be required to expend significant additional resources for trial as a result of the proposed amendment, especially since he is already named individually in the state law tort claims of negligence, gross negligence, and battery. The early pleading of a claim for punitive damages also previously put the defendants on notice that the plaintiff was seeking to impose individual liability.

Nor has the plaintiff acted in bad faith.  Once the plaintiff received the reports and analysis from the expert witnesses concerning the use of excessive force and the mechanism of the accident from Dr. Thanning (confirming that defendant Snelders struck the plaintiff Hartmann from behind), the plaintiff initiated the process of seeking leave to amend by sending a letter to defense counsel requesting consent to the proposed amendment (see filed document number 40-2), followed by the filing of this timely motion as scheduled by the Court.

The information from the plaintiff's two expert witnesses—the retire police inspector Mr.

Sheahan and forensic pathologist Dr. Thanning—confirming that the intentional use of deadly force used by defendant Snelders was excessive, came only after the initial amendment of the complaint. The analysis by these two experts was necessary prior to the making of this motion to ensure that this motion is properly supported by proof in admissible form that the amendment of the complaint would be futile as is more fully discussed below.  Plaintiff would derive no benefit from any delay since the only effect would be to delay he would obtain if successful. Sullivan v. West New York Residential, Inc., 2003 WL 21056888 (E.D.N.Y. 2003, Glasser, J.).

Finally, the Court's Order dated November 13, 2006 permits the filing of this motion for leave to amend the complaint by December 8, 2006.  As such, this motion is timely made.

### Amendment would Not be Futile

An amendment is futile only is movants cannot demonstrate 'at least colorable grounds for relief." Sullivan supra, *quoting* Ryder Energy Distrib. Corp. v. Merrill Lynch Commod. Inc., 748 F.2d 774, 783 (2nd Coir. 1984).  An amendment is futile only if the movant cannot show at "least colorable grounds for relief." Ryder Energy Distrib. Corp. v. Merrill Lynch Commod. Inc., 748 F.2d 774, 783 (2nd Cir. 1984).

Here, the individual capacity claim against the defendant Snelders is amply supported by the proof submitted herewith, including most specifically it was defendant Snelders who, by his own admission, intentionally drove his unmarked police car with the stated purpose of striking the unarmed plaintiff.  The proposed amendment to make clear that defendant Snelders issued in his individual capacity easily satisfies the requirement that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2nd Cir. 1991).

The facts, especially when construed in favor of the plaintiff Mr. Hartmann and making all

permissible inferences in his favor, establish "at least colorable grounds for relief." The Second Circuit instructs that "an officer's decision to use deadly force is objectively reasonable only if 'the officer has probably cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" Cowan v. Breen, 352 F3d 756 (2nd Cir. 2003) *quoting* O'Bert v. Vargo, 331 F3d 29, 36 (2nd Cir. 2003). "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force." Tennessee v. Garner, 471 U.S. 1, 11 (1985).

Looking at only Mr. Hartmann's version of the events (plus the physical proof)—that he was running away, was unarmed, made no verbal or physical threats, and was trying to flee from the police not go towards them—as is requiring in assessing if there is a colorable claim, defendant Snelders was not in imminent danger of death or serious physical harm at the time that he made the decision to drive up onto the curb, across the grassy median, and run down Mr. Hartman from behind on the sidewalk.  See Cowan, supra.

Mr. Hartmann's version of the events on the evening of March 12th not only establish at least colorable grounds for relief making the proposed amendment not futile, his version is buttressed by the testimony of eyewitness Jamie Florio who saw the parties "running around," did not hear any threats, and specifically saw defendant Snelders drive up the curb onto the law and strike Mr. Hartmann on the lawn by the sidewalk.  This eyewitness account, which is in accord with Mr. Hartmann's account of flight not confrontation, is also supported by the physical proof and evidence, as can be seen by the photos and as more fully elaborated by the forensic pathologist Dr. Thanning and the other experts, showing the only location of blood was on the sidewalk, the location where, even according to defendant Snelders, Mr. Hartmann went right down was he was intention struck and run over.

## CONCLUSION

On the basis of the foregoing, it is respectfully requested that this Court grant the plaintiff's motion to file the proposed amended complaint and grant to the plaintiff such other and further relief that the Court deems, just, proper and equitable.

Dated: New York, New York
December 7, 2006

Respectfully submitted,

_____s/s_____
Daniel J. Hansen (DJH:0211)
Attorney for the Plaintiff
233 Broadway, Fifth Floor
New York, NY 10279
(212) 697-3701