## DOCUMENTS

The following are the list of documents reviewed in the case of Thomas Hartmann, Plaintiff against The County of Nassau, the Nassau County Police Department, et al, defendants.

1) **Depositions**
   a) Thomas Hartmann, dated March 8, 2005
   b) Thomas Hartmann (50H), dated October 26, 2004

2) **Examination Before Trial**
   a) Karl Schoepp, dated December 15, 2005
   b) Jamie Florio, dated September 1, 2005
   c) George Archer, dated August 29, 2005
   d) John DeMartinis, dated August 24, 2005
   e) Barry O. Franklin, dated August 24, 2005
   f) John Carney, dated July 29, 2005
   g) Robert Giovannettone, dated July 29, 2005
   h) Donald Stewart, dated July 22, 2005
   i) Michael Knatz, dated May 25, 2005
   j) Robert Turk, dated May 20, 2005
   k) Karl L. Snelders, dated May 18, 2005

3) a) Plaintiff's Expert Disclosure – U.S. District Court, Eastern District of New York, dated November 18, 2005 including preliminary analysis and report by George L. Ruotolo, dated September 21, 2005.
   b) Defense Expert Richard Hernance, Mathematical Slide Calculation for Side Impact (1 page)
   c) Plaintiff's Medical Report prepared by Lone Thanning, M.D. dated August 7, 2006 (23 pages)

4) a) Defendant's Response to Plaintiff's Discovery Demands – U.S. District Court, Eastern District of New York, dated July 20, 2006 including response documents.
   b) NCPD Notice of Claim Investigation from CO Legal Bureau to Deputy CO, BSO, dated July 13, 2004 (2 pages)

5) **Witness Statement**
   a) Jamie Florio, dated March 21, 2004, received on or about August 26, 2005.

6) **NCPD Reports**
   a) Case Report – PD32SJ – 204CR0019--2 pg 2 & 3 authored by Sgt. Steward BSO, dated March 12, 2004.

1

    b)   Crime Scene Examination Report incl. Incident/Vehicle Accident Diagram with twenty (20) scene photographs authored and photographed by Det. Giovannettone, CSU, dated March 12, 2004 (11 pages).

    c)   Deadly Physical Force Report, authored by D.I. Robert M. Turk, C.O., BSO, dated March 12, 2004. (5 pages)

7) **Processing Documents (Nassau County Police Department)**

    a)   Domestic Incident Report #19484 7th Pct. NC, dated 2230 hrs. March 22, 2004. (1 page)

    b)   Teletype Alarm Sheet Det. Div. #7-432-04 other, #204CR19484 authorized by Det. Scalzo, 7th Sqd., dated March 12, 2004.

    c)   Case Report PDCN 32SJ - 204CR0019746 written by 6760SNELD dated 3/12/2004 (pages 3 & 4)

    d)   Case Report PDCN 32SJ.-.204CR0019743 written by 6760SNELD dated 3/12/2004 (page 3)

    e)   Crime Report – PDCN 85ASJ – 204CR0019484 written by 5815 ARCHER, dated March 12, 2004 (pages 1-3)

    f)   Crime Report – PDCN 85ASJ – 204CR0019743 written by 5815ARCHE, dated March 12, 2004 (pages 1-3)

    g)   Crime Report – PDCN 85ASJ – 204CR0019746 written by 5815ARCHE, dated March 12, 2004 (pages1-3)

    h)   NCPD Arrest Report – PDCN 81SJ – 204AR0004356 Hartmann Thomas P Printed 3/13/04 (2 pages)

    i)   PDCN – Serious Incident Time Log Worksheet started by P.O. Talsky sh#3212, dated March 12, 2004 1710 hrs. (start time) (1 page)

    j)   NCPD – HELO 4 report w/log prepared by P.O. Plezia AEMT #058986, dated March 12, 2004 (2 pages)

    k)   NCPD Motor Vehicle Impound Worksheet/Invoice, Impound #4-67-04, dated March 12, 2004 (1 page)

    l)   NCPD Property Receipt – PDCN 41ASJ – 204AR0004356 Hartmann, Thomas P., not authored or dated (1 page)

    m)   NCPD – Arrest Transport Slip – not authored or dated (1 page)

    n)   NCPD – Defense Notification – not authored or dated (1 page)

    o)   NYS, DMV Simplified Traffic Information, NCPD #LI683845-1 issued by P.O. Snelders, BSO on March 12, 2004 (1page)

    p)   NCPD MDT Message Log – 1st and 4th Pct. Regarding 3/12/04 (4 pages redacted)

    q)   District Court Information Arrest# 204AR0004356 dated March 12 & 13, 2004, not authored, not signed (4 pages)

        1 – CR#204CR0019484    P.O. Thomas O. McCaffrey
        2 – CR#204CR0019489    Det Barry O. Franklin
        3 – CR#204CR0019743    P.O. Karl A. Snelders
        4 – CR#204CR0019746    P.O. Karl A. Snelders

    r)   Fax documents from 631 547-1390 dated April 21, 2004

      02:45 (11 pages)
      1 – Dist Ct. Information pgs. 1-4 duplicates of (o) above
      2 – Dist Ct. Information Arr#204AR0004356 dated
          March 13, 2004 not authored, not signed, no CR#
          for Det. Barry O. Franklin (1 page)
      3 – Supporting Depositions of Kim Hartmann, dated March 11,
          2004 2340 hrs and March 12, 2004 (no time) (2 pages)
      4 – Simplified Traffic Information #LI683845-1 dated
          March 12, 2004 (1 page)
      5 – Herald Newspaper clipping – illegible (2 pages)
      6 – Newsday Home Edition pg A21 "Cop in Car Rams Suspect",
          article dated March 13, 2004 (1 page)

8) **Nassau County Police Academy Lesson Plans**
   a) Arrest Procedures (Module One) 01.428.01 revised October 29, 2001 Recruit (6 pages)
   b) Powers of Arrest – Laws of Arrest – Concepts of Custody 01.325.00 reviewed July 18, 2001 Recruit (27 pages).
   c) Arrest Powers/Laws of Arrest/Concepts of Custody 01.325.01 reviewed July 18, 2001 Recruit (25 pages) (2)
   d) Use of Force, revised August 19, 2001 Recruit/P.O. (10 pages) (2)
   e) Progression of Force – Liability, revised August 15, 2001 Recruit (8 pages).
   f) Vehicle Stops 01.435 00 dated June 2006

9) **Nassau County Police Department In-Service Training Material**
   a) Use of Force #321, October 1998 review, March 2000 revision, January 2001 revision and March 2004 revision (23-25 pages per edition) (2)
   b) Mechanics of Arrest, July 1, 1999 version, January 2001 revision (4 pages ea. edition)
   c) Laws of Arrest Standards of Proof/Arrest Powers #324/325 revised October 2000 (40 pages, even # pgs. only)
   d) Laws of Arrest Standards of Proof/Arrest Powers #324/325 revised October 2000 (40 pages).
   e) Vehicle Stops reviewed and revised June 2006.

10) **Nassau County Police Department Procedure**
    a) Vehicle Pursuit OPS 6460, revisions 0, effective November 1, 1996 (6 pages) (2)
    b) Preliminary Investigation OPS 8105 revision 0 effective October 18, 2004 (3 pages)
    c) Case Reports OPS 8110 revision 1 effective October 18, 2004 (5 pages).
    d) Deadly Force Response (DFR) Team ADM 1221 revision 0 effective September 1, 1996 (6 pages).

11) **Nassau County Police Department Rules**
   a) Standards of Conduct Rule 16, Use of Force, no date (1 page, page 6 of 6)
   b) Arrest, Article 17 revisions 0, effective October 30, 1998 (10 pages)
   c) General Article 6 revisions 3 effective May 17, 2002 (4 pages).

12) **Nassau County Teletype Alarm Sheet**
   a) File #3212 CO8, Teletype Order #105, Carotid Restraint Deadly Physical Force, dated May 13, 1987 (11 pages).
   b) File #OCOP 1173 SJR:rba Teletype Order # 106 Complaint Tracking Procedure, dated May 29, 1991 (1 page).
   c) File #OCOP 1173 DFK:RB:lv Teletype Order # 47 Complaint Tracking Procedure, dated March 31, 1992 (1 page).

13) **Nassau County Police Department Legal Bulletin**
   a) Legal Bulletin #2 dated March 2, 1992 (7 pages).

14) **Nassau County Police Department Training Bulletin**
   a) Auto Accident Investigation File 2158 Number 2002-02 dated April 3, 2002 (5 pages).

15) **Nassau County Police Department News Release**
   a) Incident: Arrest/aggravated harassment, Location: Oceanside, Date/time: March 12, 2004, 1700, Details by: Inspector Turk BSO 3/13/14 1130/6087

16) **Nassau County Police Department Communications Division Audio Tape**
   a) Side 1 – 3/12/04 3247 Brower Ave., Allen Ave. and Fortesque Ave., Oceanside (1) 911 and Radio F6 1655:23 – 1729:00, F5 1655.16 – 1702.30, F7 1654:29 – 1656:45.
   b) Con't F7 1657:40 – 1819:05.

17) **Penal Law of the State of New York**
   a) Article 35 – Defense of Justification
   b) Section 120.15 – Menacing, 3rd degree (B Misd)
   c) Section 205.30 – Resisting Arrest (A Misd)
   d) Section 240.30 – Aggravated Harassment 2nd degree (A Misd)

18) **N.Y.S. Vehicle and Traffic Law**
   a) Article 22 – section 600, 601, 603, 603a, 604, 605

19) **Misc.**
   a) Herald article, Plaintiff's exhibit 25, dated May 18, 2005 (1 page)

4

      b)      Find Law – U.S. Supreme Court, Tennessee vs. Garner,
471 US 1 (1985) (25 pages)

20) **Site visits at 454 Allen Avenue** and pursuit route from Brower Avenue, July 7, 2006, July 13, 2006 and July 20, 2006.

## INCIDENT

On March 12, 2004, at approximately 1700 hours, P.O. Karl L. Snelders, serial #6760, and assisted by P.O. Michael Knatz, serial #7003 of the Nassau County Police Department assigned to the Bureau of Special Operations (BSO) Squad B effected the arrest of Thomas P. Hartmann M/W/35 of 96 Central Blvd, Merrick, N.Y. 11566. Thomas P. Hartmann was arrested and charged with Aggravated Harassment 2nd degree, subd 1, (A Misd.), Resisting Arrest (A Misd), Reckless Driving (A Misd.) and Menacing 3rd degree (B Misd.) 2 counts. The arrest was affected on the lawn in front of 454 Allen Avenue, Oceanside, New York under the following circumstances as per the Police reports on the incident and depositions of P.O. Snelders and P.O. Knatz.

The arrest was initiated based on crime report numbers CR0019484 and CR0019743 filed on March 11, 2004, which alleged that Hartmann made telephone threats against the safety and well being of his wife, Kim Hartmann, and did additionally allegedly make threats on the telephone to the Nassau County Police Officers present taking the report. As a direct result of the preceding reports, on March 12, 2004, several officers from the Bureau of Special Operations were assigned to visit and/or surveil locations throughout Nassau County in an effort to locate and apprehend Hartmann. P.O. Snelders and Knatz performing different assignments in the A.M. regarding Hartmann were reassigned in mid afternoon together in BSO/RMP 942 to perform surveillance near 3247 Brower Avenue, Oceanside, N.Y., the home of Hartmann's brother. With P.O. Snelders as the operator, their vehicle was parked approximately 500 feet west of 3247 Brower Avenue on the eastbound side of the roadway. Shortly before 1700 hours, P.O. Snelders observed Hartmann approaching from the west in his 2000 Lexus SUV (Black). As Hartmann passed the RMP, P.O. Snelders applied his seat belt, placed his flashing red light on the vehicle dashboard and pulled from the curb. Hartmann had proceeded to the intersection with East Sunnybrook Drive, turned left, preceded 2-3 car lengths onto the roadway then parked on the right hand side of the street. P.O. Snelders and Knatz followed. P.O. Snelders and Knatz state that Hartmann had exited his vehicle and had proceeded to the rear bumper as they stopped their vehicle 10 feet behind and toward the center of the road behind the SUV. P.O. Snelders and Knatz claim Hartmann at that time placed his right hand in his pants and began to yell threats at them – "they had better shoot him or he would shoot them". P.O. Knatz states that he was halfway in and out of the vehicle with his gun drawn in his right hand advising Hartmann that he was under arrest. P.O. Snelders remained behind the wheel in the vehicle. Hartmann then backpedaled toward the SUV, turned and reentered his vehicle. P.O. Knatz reentered his vehicle, holstered his weapon and P.O. Snelders pulled the RMP alongside Hartmann's vehicle. P.O. Snelders claims he observed Hartmann reaching for something and reversed the RMP. Hartmann then drove away with P.O. Snelders and Knatz in pursuit.

The pursuit proceeded north on Fortesque Avenue to Allen Avenue, a distance of 1.1 miles at speeds up to 60 MPH. The pursuit terminated on Allen Avenue when Hartmann turned right from Fortesque Avenue and stopped his vehicle in front of 454 Allen Avenue facing diagonally toward the curb on the south side of the street (facing

southeasterly) and exited the SUV. P.O. Snelders brought the RMP to a stop approximately 25 feet behind the SUV in the center of the roadway and P.O. Knatz exited the RMP with gun drawn anticipating a foot pursuit. Again P.O. Snelders remained in the RMP. Both P.O. Snelders and P.O. Knatz claim at this time, Hartmann began to approach the RMP placing his right hand into his pants, yelling and threatening them. P.O. Knatz moved to the rear of the RMP as Hartmann approached the left front of the RMP and continued to the vehicle operator's door. P.O. Snelders claims to have leaned across the front seat in an effort to reach the OC spray in the passenger door pocket. Meanwhile, P.O. Knatz moved to the left rear of the RMP with gun drawn. At this point, Hartmann began to back away toward his SUV. P.O. Knatz moved to the rear of the SUV as P.O. Snelders proceeded to move the RMP forward toward Hartmann. The police report states the P.O. Snelders fearing Hartmann had a gun and having moved to cover and in a position to fire upon the officers posed an imminent threat of deadly physical force. P.O. Snelders drove the RMP slowly around the front of the SUV then gunned the engine intentionally striking Hartmann. Hartmann upon being struck fell to the ground whereupon P.O. Snelders intentionally continued forward onto the lawn running over Hartmann's legs. P.O. Snelders continued on to the lawn completing a U-turn from the roadway which brought the RMP into a position parallel to the roadway facing west, opposite to its original eastbound direction. P.O. Snelders and P.O. Knatz approached Hartmann, searched him for weapons with negative result then called for medical assistance.

## METHODOLOGY

There is one point of agreement among the individuals of the Nassau County Police Department (NCPD) involved in the incident in question. All agree, including P.O. Karl Snelders, that at approximately 1657 hours, March 12, 2004, P.O. Snelders, while operating RMP 942 did intentionally strike and run over Thomas Hartmann in the vicinity of 454 Allen Avenue, Oceanside, N.Y. The principle question and reason for this report is whether the actions of P.O. Snelders were justifiable under the Penal Law, State of New York and within the guidelines of the rules and regulations of the NCPD. The methodology used to approach this issue was a comprehensive review, collation and analysis of the NCPD reports, arrest documents and court information prepared relative to the events of March 12, 2004. These documents were compared and contrasted with the depositions and related material listed in the Documents section, as well as site visits to Brower Avenue and Sunnybrook Drive, the pursuit route and Allen Avenue – all in Oceanside, N.Y. The objective was to determine if the findings of Deputy Inspector Robert Turk in his Deadly Physical Force report, that the actions of P.O. Snelders were justified under the Penal Law, State of New York and the NCPD rules and regulations in his use of deadly physical force, were supported by the documents provided.

## DOCUMENT REVIEW, COLLATION AND COMPARISONS

The integrity and value of the conclusions of an investigation rest upon its objectivity, thoroughness and documentation of details. The reports regarding events on March 12, 2004 involving Thomas Hartmann have been reviewed, collated and analyzed, revealing discrepancies, inconsistencies and/or omitted details among the reports, corresponding documents and related depositions provided. These items are all listed in the Documents section of this report. The ability to perform an analysis of the qualitative and quantitative compliance of P.O. Snelders and the related reports and documents to the administrative, operational, procedural and tactical requirements of the NCPD is limited by the documents provided through the County Attorney. Upon receipt of additional requested documents, a supplemental report can be prepared to further analyze compliance. The following analysis of documents is presented in sequential order of preparation in relation to events of 3/12/04.

1) Case Report PDCN32SJ 204CR0019--2 Pursuant Report written by 5912STEWA on 3/12/04

Sgt. Donald Stewart, BSO squad A Supervisor, based solely on his conferral with P.O. Snelders and P.O. Knatz did write the Pursuit Report on the evening of 3/12/04 at the 7th Precinct, identified as Plaintiff's Exhibit 30, dated 5/18/05. Sgt. Stewart, who is not familiar with Oceanside, and had never been on Allen Avenue, responded to the scene at 1840 hours and departed at 1900 hrs. on the evening of 3/12/04. He states that he did not see the officers (Snelders and Knatz) at the scene although they are logged there from 1658 to 1948 hours. Sgt. Stewart stated that the first time he saw the officers was at the 7th Precinct. At that time, he interviewed them separately and typed up his report in a computer terminal in WORD. Sgt. Stewart states he read the report back to the officers and that it contained all the information about what happened, (13:9-16:13) and that neither officer suggested any changes. He called this single draft into case offense without review or saving the original draft. When finished, he advised D.I. Turk that the pursuit report was completed. P.O. Snelders, at first stated, that he did not speak to Sgt. Stewart at anytime that he could recall. He later stated Sgt. Stewart was not present at the scene but he did recall providing information to Sgt. Stewart regarding the incident at the 7th Precinct.. P.O. Snelders, then later stated, he does not remember talking with Sgt. Stewart.

The report itself contains a number of omissions, contradictions and inconsistencies when compared to P.O. Snelders, P.O. Knatz, Det. Archer and Thomas Hartmann's depositions, as well as, the Crime Report narratives prepared by Det. Archer. Thomas Hartmann (Hartmann) states that there was no confrontation with the police on Sunnybrook Drive. He observed the police across the street as he was getting out of his vehicle. He had opened the door to his SUV, stepped out and had not closed the door behind him. He observed the police on Brower Avenue turning left on to Sunnybrook Drive, got back in his vehicle and drove off. He states that he did not have any

9

conversation with the police nor did he make any threats. He never observed police officers getting out of their vehicle.

Sgt. Stewart's pursuit report which he affirmed at his deposition was accurate and Det. Archer's Crime Report narratives make no reference to the RMP having pulled parallel to the SUV following Hartmann's alleged threats and his re-entry into his SUV. Just as Sgt. Stewart had, Det Archer based his report on interviews with Snelders and Knatz.

Officer Knatz stated he first observed Hartmann standing in the roadway on Sunnybrook Drive at the rear bumper of his SUV. Knatz partially exited the passenger side of the RMP (one foot out – one foot in) with his weapon in his right hand*. Hartmann stood at the rear of his SUV with his right hand in his waistband shouting threats. Hartmann then returned to the driver's side door of his SUV and re-entered the vehicle. Knatz got back in the RMP and reholstered his weapon believing Hartmann was going to drive away. Where upon P.O. Snelders, the vehicle operator, slowly pulled up parallel to the SUV. The RMP and SUV were very tight. So close, that Knatz could not open his door to get out. Knatz's window was down and Hartmann's was up. Knatz looked up to the right but could not see Hartmann through his open window. The SUV was higher and Knatz did not have a good angle because the vehicles were extremely tight. Knatz could see nothing of Hartmann or his body. Knatz had no idea what Hartmann was doing, although Snelders said Hartmann was reaching for something.. Snelders backed up the RMP to the rear of the SUV. Hartmann then drove off.

P.O. Snelders account varies on some details from Knatz. Snelders first observed Hartmann's SUV traveling eastbound on Brower Avenue, where he was parked. When the SUV was a hundred or more feet past his parked location he then pulled from the curb. Before pulling from the curb, he first put the red light on the dashboard, put on his seat belt and Knatz advised Communication Bureau that they had the vehicle. Snelders proceeded to the first left hand turn (Sunnybrook Drive) and observed Hartmann exiting his vehicle as he turned onto Sunnybrook Drive. He proceeded slowly forward from the corner and stopped in the middle of the roadway ten (10) feet behind Hartmann's parked SUV. Snelders account of Hartmann's movements, threats and return to the SUV are consistent with Knatz. Snelders states that after Hartmann was seated in his SUV, he pulled the RMP alongside the SUV to try to cut off Hartmann's escape. Snelders estimates that he stopped the RMP with about 4 to 5 feet between the vehicles. Snelders also claims he was wearing his seat belt while Knatz was seated to his right in the passenger seat. Leaning across from this position he states was able to look to his right through the passenger side window - not the windshield – and, despite his poor visibility and partially obstructed view, Snelders indicates he was able to observe what Hartmann was doing (something Knatz in the passenger seat was unable to accomplish). Snelders claims he observed Hartmann's <u>right</u> shoulder through the passenger side window and that Hartmann was reaching under his seat. Snelders backed up the RMP and stopped when RMP front end was at the SUV rear bumper. Hartmann then drove away in his SUV.

Sgt. Stewart's report reflects that the pursuit lasted five (5) minutes and covered