UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

THOMAS HARTMANN,

                                        Plaintiff,

-against-

THE COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, POLICE OFFICER KARL N.
SNELDERS, POLICE OFFICER MICHAEL KNATZ,
DEPUTY INSPECTOR ROBERT TURK, LIEUTENANT
THOMAS ZAMOJCIN, POLICE OFFICER KEVIN W.
SMITH, POLICE OFFICER PHILIP BRADY,
DETECTIVE BARRY O. FRANKLIN, POLICE
OFFICER THOMAS O. McCAFFREY and "JOHN and
JANE DOES 1-15" representing as yet unknown and
unidentified police officers,

                                        Defendants.

CV-04-1784 (ILG) (CLP)

------------------------------------------------------------------------ x


## NASSAU COUNTY DEFENDANTS'
## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

                                                                Lorna B. Goodman
                                              Nassau County Attorney
                                              By: Bethany O'Neill
                                              Deputy County Attorney
                                              One West Street
                                              Mineola, New York 11501
                                              (516) 571-3056
                                              Attorney for Defendants

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND………………………………………………………...2

STANDARDS FOR A MOTION TO AMEND A COMPLAINT……………………4

**POINT I**……………………………………………………………………………. 5
FUTILITY OF PLAINTIFF'S AMENDMENT

**POINT II** …………………………………………………………………………...7
PLAINTIFF'S UNDUE DELAY AND BAD FAITH

**POINT III**…………………………………………………………………………...8
PREJUDICE TO DEFENDANTS

**CONCLUSION**……………………………………………………………………..9

## PRELIMINARY STATEMENT

The plaintiff commenced this action against Nassau County, the Nassau County Police Department ("NCPD") and several individual police officers on April 30, 2004 pursuant to 42 U.S.C. §1983 seeking damages for the alleged violation of his constitutional rights. *See **Exhibit A**, Compl.* Specifically, plaintiff asserted improper use of excessive force. Plaintiff was granted permission to file an Amended Complaint on June 14, 2005 to include various state law claims against defendant Karl N. Snelders ("Snelders") and the County of Nassau, including claims for negligence, assault and battery. *See Plaintiff's Exhibit 1, Amended Compl.* Therein, plaintiff essentially reiterated that the conduct alleged for all causes of action asserted was performed by the officers involved, including Officer Snelders, in their official capacity as police officers, "not as individuals." *See Plaintiff's Exhibit 1, Amended Compl. ¶ 3.* Moreover, plaintiff claims that at the time of the incident giving rise to this lawsuit, the defendant Snelders was operating a NCPD radio motor patrol vehicle "during the course of his employment" with the County of Nassau and NCPD. *See Plaintiff's Exhibit 1, Amended Compl. ¶¶ 40-41.* Plaintiff now seeks to amend the complaint a second time to assert claims against Officer Snelders in his individual capacity under Section 1983. *See Plaintiff's Exhibit 2, Second Amended Compl. ¶ 3.* Plaintiff's argument that the first amended complaint already contains state law claims against Snelders in his individual capacity is false and misleading. *See Plaintiff's Exhibit 1, Amended Compl. ¶ 3.* The Nassau County Defendants respectfully submit this Memorandum in Opposition to plaintiff's motion to amend the complaint because the proposed amendment is futile, unduly delayed, and will result in undue prejudice to the defendants.

## FACTUAL BACKGROUND

The incident giving rise to plaintiff's lawsuit occurred on March 12, 2004 when plaintiff was struck by a police vehicle operated by Officer Snelders to terminate the plaintiff's imminent use of deadly physical force. At that time, there was an outstanding warrant for plaintiff's arrest arising from a domestic incident between the plaintiff and his wife, Kim Hartmann. *See* **Exhibit C**, *Knatz deposition at p. 28-29*. On March 11, 2004, plaintiff made several threats to kill his wife and a direct threat to kill a police officer. *See* **Exhibit C**, *Knatz deposition at pp. 28-31*. On March 12, 2004, Officers Michael Knatz ("Knatz") and Snelders, members of the NCPD's Bureau of Special Operations ("BSO"), were directed to locate and arrest the plaintiff. *Id.*; **Exhibit B**, *Snelders deposition at pp. 94-97, 101-104*. Prior to their confrontation with the plaintiff, the officers were informed that the plaintiff had a criminal record, he was violent, there was a good chance he had a gun, and he was considered extremely dangerous. *Id*. An alarm was broadcasted throughout all commands that the plaintiff was known to carry a weapon. *See* **Exhibit D**, *Alarm Sheet*. Officers Knatz and Snelders were directed to stake out one of the locations the plaintiff was expected to appear, namely the home of the plaintiff's brother located on Brower Avenue in Oceanside, New York. *See* **Exhibit B**, *Snelders deposition at pp. 105-107*. Plaintiff ultimately showed up at this location in a black Lexus SUV, exited his vehicle, and repeatedly shouted to the officers that he was going to shoot them. *See* **Exhibit C**, *Knatz deposition at pp. 51-52, 57-60, 65-66*. Officer Knatz identified himself as a police officer and the plaintiff continued to shout and threaten the officers. *Id*. The plaintiff returned to his vehicle and left the Brower Avenue location; the officers followed in a high speed pursuit behind the plaintiff. *Id. at pp. 77-78*. Officer Knatz immediately requested police assistance via radio. *Id. at pp. 77-78*; **Exhibit B**, *Snelders deposition at pp. 145-147*. The plaintiff ultimately brought his

2

vehicle to a stop on Allen Avenue, exited his vehicle, and continued to threaten the officers by stating "you better shoot me before I shoot you", all while he held his hand in his pants gesturing possession of a weapon. *Id. at pp. 84-98*. Although plaintiff contests this chain of events, there was an eyewitness, Jamie Florio ("Florio"), who observed plaintiff yelling, waving his arms, pointing at the police officer, and running after at least one the police officer on Allen Avenue. *See **Exhibit E**, Florio Supporting Deposition*. Plaintiff approached the driver's side of the police vehicle and threatened Officer Snelders' life while holding his hand in his waistband causing Officer Snelders to duck for cover across the front seat of the police vehicle. *See **Exhibit B**, Snelders deposition at pp. 155-162*. Plaintiff then backpedaled to the front of his vehicle and Officer Snelders slowly moved toward the plaintiff's vehicle. *See **Exhibit B**, Snelders deposition at pp. 155-169; **Exhbit E**, Florio Supporting Deposition*. The plaintiff was in a semi-crouched position in front of the plaintiff's vehicle. *Id. at p. 169*. Officer Snelders struck the plaintiff with the police vehicle near the curb when he observed the plaintiff pulling his hand out of his pants. *Id. at pp. 167-169*. Officer Snelders testified that at that moment it was his intention to strike plaintiff with the vehicle "to stop him from pulling out what he [I] thought was a handgun"; it was not Snelders' intention to run over plaintiff's legs. *Id. at pp. 167-172*. Officer Snelders struck the front of the plaintiff's legs at a speed of approximately 5-8 mph and the plaintiff, as he was facing Snelders, fell backwards onto the ground. *Id. at pp. 172, 174*.

The plaintiff claims that when he stopped his vehicle on Allen Avenue, he exited the vehicle and immediately ran to get away from the police. *See Plaintiff's Exhibit 4, Hartmann deposition at 108-112*. However, the eyewitness, Florio confirms the officers' account because her observations reveal that the plaintiff did not just exit his vehicle and run away from the police. Rather, Florio observed plaintiff, described as the "guy in the blue sweatshirt", "yelling,

3

waving his arms and pointing at the guy in the grey sweatshirt...the grey sweatshirt man ran behind the police car and the blue sweatshirt [plaintiff] ran after him. The blue sweatshirt man [plaintiff] then went back to the front of the Lexus...the police car moved in the direction of the front of the Lexus. I saw the police car strike the guy in the blue sweatshirt [plaintiff] in the legs." *See Exhibit E, Florio Supporting Deposition.*

On June 17, 2004, plaintiff was indicted by a Nassau County grand jury for criminal contempt in the first degree, aggravated harassment in the second degree (four counts), menacing in the third degree (two counts), resisting arrest, and reckless endangerment in the second degree. *See Exhibit F, Indictment No. 1364 N-04.* On January 24, 2005, plaintiff pled guilty to criminal contempt in the second degree, aggravated harassment with respect to the officer's life he threatened, and resisting arrest. *See Exhibit G, Change of Plea.*

## STANDARDS FOR A MOTION TO AMEND A COMPLAINT

Generally, leave to amend a complaint should be freely granted under Federal Rules of Civil Procedure 15(a) when justice so requires. Furthermore, the grant or denial of an opportunity to amend a complaint is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Despite the general rule, however, an amendment should not be permitted where there has been "undue delay, bad faith, dilatory motives, undue prejudice to the opposing party, or futility of the amendment." *See Foman v. Davis*, 371 U.S. at 182; *see also Richardson Greenshields Sec., Inc. v. Lau*, 824 F.2d 647, 653 (2d Cir. 1987); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *Matthew v. Delta Air Lines, Inc.*, 1999 U.S. Dist. LEXIS 18154, *3 (E.D.N.Y. 1999). The Plaintiff's application herein should be denied since the proposed amendment is futile, unduly delayed, in bad faith, and prejudicial to the defendants.

4

### POINT I: FUTILITY OF PLAINTIFF'S AMENDMENT

An amendment of a claim is impermissible when the amendment will be futile. *Foman v. Davis*, 371 U.S. at 182. Leave need not be granted if the amendment "is unlikely to be productive." *Stephenson v. Dow Chem. Co. (In re Agent Orange Prod. Liab. Litig.)*, 220 F.R.D. 22, 24 (E.D.N.Y. 2004) (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)). Plaintiff is essentially seeking to amend the complaint to assert claims against Snelders, a member of the NCPD, in his individual capacity for money damages. Respectfully, the proposed amendment is futile because an individual capacity claim against Snelders is barred by the doctrine of qualified immunity.

The Second Circuit has held that the defense of qualified immunity is not a valid basis for denying leave to amend the complaint. *See Oliver Sch. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991) (citations omitted). However, there is an exception to this general rule where the complaint itself sets up, on its face, the qualified immunity defense. *See Green v. Moraio*, 722 F.2d 1013, 1019 (2d Cir. 1983). That is, the defense is based on facts appearing on the face of the complaint. *See McKenna v. Wright*, 386 F.3d 432, 435-436 (2d Cir. 2004). The exception is likewise applicable herein where the plaintiff's own complaint sets up the qualified immunity defense. Specifically, the plaintiff alleges that Snelders, in his capacity as a police officer and while within the scope of his employment as such, used the police vehicle as an instrument of deadly physical force to strike the plaintiff. *See Plaintiff's Exhibit 1, Amended Compl. ¶¶ 3, 18, 26, 30-31, 36-37, 40-41, 44, 58, 88.*

Public officials sued in their individual capacity are entitled to qualified immunity if their conduct does not violate clearly established constitutional rights or it was objectively reasonable for them to believe their administrative and investigative acts did not violate those rights. *See Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987); *see also Day v. Morgenthau*, 909 F.2d 75,

5

77 (2d Cir. 1990). The doctrine of qualified immunity shields law enforcement officers from liability related to their official acts. *See Imbler v. Pachtman,* 424 U.S. 409, 417-19 (1976). In *Saucier v. Katz,* 533 U.S. 194, 201-202 (2001), the Supreme Court mandated a two-step approach with respect to qualified immunity: (1) was there a constitutional violation, and (2) was the right clearly established, such that it would be clear to a reasonable official that his or her conduct was unlawful in the situation he or she confronted. Here, the plaintiff has not shown that any constitutional right was violated by Snelders. Furthermore, based on the facts presented, it was objectionably reasonable for Snelders to believe that his actions would not violate a clearly established federal protected right. *See Storck v. Suffolk County Dep't of Social Services,* 62 F. Supp. 2d 927 (E.D.N.Y. 2000).

The plaintiff claims that Snelders' conduct in striking plaintiff with the police vehicle constituted excessive force which deprived plaintiff of his constitutional right. To the contrary, the record clearly demonstrates that Snelders acted reasonably and in accordance with the law in striking plaintiff with the police vehicle to terminate plaintiff's imminent use of deadly physical force. *See* NY CLS Penal §§ 35.15, 35.30 (2006). By plaintiff's own actions, as verified by Officers Knatz, Snelders and eyewitness Florio (***Exhibit E***), plaintiff clearly placed Snelders and Knatz in imminent fear of their lives by repeatedly threatening to shoot them while reaching in his pants for what the officers believed to be a gun. Officer Snelders struck the plaintiff as he observed the plaintiff pulling his hand out of his waistband in order to terminate plaintiff's imminent use of deadly physical force. *See **Exhibit B**, Snelders deposition at pp. 155-169.* Since Officer Snelders is entitled to qualified immunity, there is no merit to plaintiff's individual capacity claim and leave to amend should be denied as futile. *See Reynolds v. Blumenthal,* 2006 U.S. Dist. LEXIS 68970, *32-33 (D. Conn. 2006).

### POINT II: PLAINTIFF'S UNDUE DELAY AND BAD FAITH

The Court may deny a motion to amend based on undue delay and bad faith when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed and there is no excuse for failure to plead it. *See* 3 James Moore, Moore's Federal Practice § 15.15 [1]-[3] (2006); *see also Schnepf v. Siegel*, 1998 U.S. Dist. LEXIS 12386, *3-5 (S.D.N.Y. 1998); *Berman v. Parco*, 986 F. Supp. 195, 197 (S.D.N.Y. 1997). Where the proposed claim is not predicated on facts learned after the pleading stage of the litigation, the resulting delay is not excusable. *See Priestley v. American Airlines, Inc.*, 1991 U.S. Dist. LEXIS 4804, *4 (S.D.N.Y. 1991).

Here, the plaintiff filed this action in April 2004. Plaintiff was deposed in October 2004 and March 2005. The defendant officers, Snelders and Knatz, were deposed in May 2005. The plaintiff filed an Amended Complaint to include state law claims in June 2005. In light of the foregoing, the plaintiff's instant application to amend the complaint a second time almost three years after commencement of this action is clearly untimely.

It is undisputed that no newly discovered facts motivated the proposed amendment. *See County of Washington v. Counties of Warren & Wash. Indus. Dev. Agency*, 2001 U.S. App. LEXIS 223, **9-11 (2d Cir. 2001). In fact, plaintiff was aware of the factual underpinnings upon with the amendment is based when both the original and the amended complaint were filed in 2004 and 2005, respectively. *See* **Exhibit A**, *Compl.* ¶¶ *51, 53, 55; Plaintiff's Exhibit 1, Amended Compl.* ¶¶ *54, 56, 58.* Further, the plaintiff was certainly aware of the facts upon which the proposed amendment is based following the completion of pertinent depositions in this matter. The factual basis for plaintiff's proposed individual capacity claim against Snelders is exactly the same as alleged in the original pleadings. *Id.* There is simply no reason that the plaintiff could not have asserted the claim at the time he filed the original or the amended

7

complaint. The plaintiff is therefore clearly guilty of undue and unexplained delay in asserting the individual capacity claim against Snelders and the amendment should not be permitted. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (affirming denial of leave to amend complaint when party moved to amend more than seventeen months after bringing suit, and more than six months after their second amended complaint).

In an attempt to justify the undue delay, the plaintiff argues that he was waiting for reports from his expert witnesses confirming that the plaintiff was struck from behind while running from the police. First, this explanation is insufficient to explain why the plaintiff did not assert the individual capacity claim from the outset of this litigation. *See Kanyi v. U.S.*, 2002 U.S. Dist. LEXIS 13545, *11-12 (E.D.N.Y. 2002) citing *Wechlsler v. Hunt Health Sys. Ltd.*, 186 F. Supp. 2d 402, 418 (S.D.N.Y. 2002). Any purported delay in the receipt of discovery materials is insufficient to justify seeking amendment to a complaint. *Id.* Second, even after receipt of the plaintiff's expert reports prepared by Mr. Sheahan and Dr. Thanning, both of which date back to August 2006 (*Plaintiff's Exhibits 8 & 9*), the plaintiff did not seek leave to amend the complaint until three (3) months later on November 8, 2006. *See Civil Case Docket, Document No. 38*. Finally, contrary to what the plaintiff suggests, his experts' opinions do not constitute conclusive evidence of the allegations.

### POINT III: PREJUDICE TO DEFENDANTS

The "longer the period of an unexplained delay, the less will be required of the non-moving party in terms of showing prejudice." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *Kanyi v. U.S.*, 2002 U.S. Dist. LEXIS at *13.

The plaintiff argues that the defendants were aware that the plaintiff was seeking to impose individual liability because the amended complaint filed in 2005 contains state law

claims against Snelders and a claim for punitive damages. To the contrary, in that complaint, the plaintiff expressly states that the individual defendants were sued in their official capacities and "not as individuals." *See Plaintiff's Exhibit 1, Amended Compl.* ¶ 3. The prejudicial impact to defendants herein relates to the fact that the proposed individual capacity claim against Snelders will subject the defendants to punitive damages under Section 1983, which is not presently available to plaintiff. *Id.* Although no further discovery would be necessary, the defendants would be prejudiced by having to defend against a new theory of recovery. 3 James Moore, Moore's Federal Practice § 15.15 [2] (2006). Specifically, Snelders would be exposed to personal liability and Nassau County would be exposed to punitive damages under Section 1983. Based on the foregoing, denial of plaintiff's application seeking a second amendment of the complaint is warranted.

## CONCLUSION

For the foregoing reasons, the Nassau County Defendants respectfully request that the Court issue an order denying plaintiff's motion for leave to amend the complaint together with such other relief as the Court deems just and proper.

Dated: Mineola, New York
      January 8, 2007

                              LORNA B. GOODMAN
                              Nassau County Attorney

            By:   /s/
                   Bethany O'Neill (BBO 0862)
                   Deputy County Attorney
                   One West Street
                   Mineola, New York 11501
                   (516) 571-3056
                   Attorney for Nassau County Defendants