UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

THOMAS HARTMANN,

                           Plaintiff,

-against-

THE COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, POLICE OFFICER KARL N.
SNELDERS, POLICE OFFICER MICHAEL KNATZ,
DEPUTY INSPECTOR ROBERT TURK, LIEUTENANT
THOMAS ZAMOJCIN, POLICE OFFICER KEVIN W.
SMITH, POLICE OFFICER PHILIP BRADY,
DETECTIVE BARRY O. FRANKLIN, POLICE
OFFICER THOMAS O. McCAFFREY and "JOHN and
JANE DOES 1-15" representing as yet unknown and
unidentified police officers,

                           Defendants.

CV-04-1784 (ILG) (CLP)

---------------------------------------------------------------------- x


# MEMORANDUM OF LAW
## IN SUPPORT OF THE COUNTY DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT


**Lorna B. Goodman**
**Nassau County Attorney**
**1 West Street**
**Mineola, New York 11501**


Of Counsel,
Sondra M. Mendelson
Dated: October 29, 2007

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT I
BECAUSE HARTMANN NAMED NASSAU COUNTY AS A DEFENDANT,
HIS CLAIMS AGAINST SNELDERS AND KNATZ IN THEIR OFFICIAL
CAPACITIES SHOULD BE DISMISSED AS DUPLICATIVE. . . . . . . . . . . . . . . . . . . . . . 9

POINT II
PROBABLE CAUSE FOR HARTMANN'S ARREST AND CONFINEMENT EXISTED . .10

POINT III
HARTMANN'S EXCESSIVE USE OF FORCE CLAIM SHOULD BE
DISMISSED BECAUSE SNELDERS' APPLICATION OF FORCE
WAS OBJECTIVELY REASONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

POINT IV
SNELDERS ARE KNATZ ENTITLED TO QUALIFIED IMMUNITY BECAUSE IT
WAS OBJECTIVELY REASONABLE FOR THEM TO BELIEVE THAT THEIR
ACTIONS WERE LAWFUL IN LIGHT OF CLEARLY ESTABLISHED LAW AND
THE INFORMATION THAT THEY POSSESSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

POINT V
BECAUSE THERE ARE NO FEDERAL CONSTITUTIONAL VIOLATIONS,
THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION . . . . . . . . . . 22

POINT VI
PLAINTIFF'S STATE LAW ASSAULT AND BATTERY CLAIMS SHOULD
BE DISMISSED BECAUSE THERE WAS PROBABLE CAUSE FOR
HARTMANN'S SEIZURE AND SNELDERS'S APPLICATION OF FORCE
WAS OBJECTIVELY REASONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

POINT VII
PLAINTIFF'S STATE LAW NEGLIGENCE CLAIM MUST BE DISMISSED
SINCE THE COUNTY DEFENDANTS HAVE CONCEDED THAT SNELDERS
INTENTIONALLY STRUCK HARTMANN WITH A POLICE VEHICLE . . . . . . . . . . . . . . 24

POINT VIII
PLAINTIFF'S STATE LAW CLAIM OF NEGLIGENT HIRING, RETENTION,
TRAINING, AND SUPERVISION CAN NOT LIE WHERE SNELDERS AND
KNATZ WERE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT. .. . . . . . . . . 25

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

## <u>TABLE OF AUTHORITIES</u>

# Cases

*Anderson v. Creighton,* 483 U.S. 635 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ashley v. City of New York*, 779 N.Y.S.2d 502 (2d Dep't 2004). . . . . . . . . . . . . . . . . . . . . . . . . .25

*Bartsch v. City of Yakima*, 2006 U.S. Dist. LEXIS 5274 (E.D. Wash. 2006). . . . . . . . . . . . . . .15

*Bayles v. Manns*, 05-2325, 2006 U.S. App. LEXIS 2728 (2d Cir. 2006). . . . . . . . . . . . . . . . . . 24

*Brown v. Ingram*, 04-CV-6074, 2007 U.S. Dist. LEXIS 25153 (W.D.N.Y.  Apr. 4, 2007). . . .  24

*Brewster v. Nassau County*, 349 F. Supp. 2d 540 (E.D.N.Y. 2004). . . . . . . . . . . . . . . . . . . . 10, 11

*Cameron v. Fogarty*, 806 F.2d 380 (2d Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Carson v. Lewis*, 35 F. Supp. 2d 250 (E.D.N.Y. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Cosby v. City of White Plains*, 04 Civ. 5829, 2007 U.S. Dist. LEXIS 23770 (S.D.N.Y.

Feb. 9, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cunningham v. U.S.*, 472 F. Supp. 2d 366 (E.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Danielak v. City of New York*, 02-CV-2349, 2005 U.S. Dist LEXIS 40901 (E.D.N.Y.

Sept. 26, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 20

*Esmont v. City of New York*, 371 F. Supp. 2d 202 (E.D.N.Y. 2005). . . . . . . . . . . . . . . . . . 14,  15

*Estate of Jackson v. City of Rochester*, 705 F. Supp. 779 (W.D.N.Y.1989). . . . . . . . . . . . . . . .18

*Graham v. Connor*, 490 U.S. 386 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Griffin v. City of New York*, 287 F. Supp. 2d 392 (S.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . 25

*Hartline v. Gallo*, 03 Civ. 1974, 2006 U.S. Dist. LEXIS 75849 (E.D.N.Y. Sept. 30, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hernandez v. City of New York*, 00 Civ. 9507, 2004 U.S. Dist. LEXIS 23365 (S.D.N.Y. Nov. 22, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hill v. City of New York*, 03 CV 1283, 2005 U.S. Dist. LEXIS 38926 (E.D.N.Y. Dec. 29, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hunter v. Bryant*, 502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 20

*Loria v. Gorman*, 306 F.3d 1271 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*McNeill v. City and State of New York*, 06-CV-4843, 2006 U.S. Dist. LEXIS 77085 (E.D.N.Y. Oct. 24, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Merzon v. County of Suffolk, et al.*, 767 F.Supp 432 (E.D.N.Y. 1991). . . . . . . . . . . . . . . . . . .24

*Murray v. Williams*, 05 Civ. 9438, 2007 U.S. Dist. LEXIS 11321(S.D.N.Y. Feb. 8, 2007). . . . .10

*Nogue v. City of New York*, No. 98-CV-3058, 1999 U.S. Dist. LEXIS 13201 (E.D.N.Y. Aug. 27, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Oliver v. Cuttler*, 968 F.Supp 83 (E.D.N.Y. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Orange v. County of Suffolk*, 830 F.Supp. 701 (E.D.N.Y. 1993). . . . . . . . . . . . . . . . . . . . . . . .10

*Otero v. Town of Southampton*, 194 F. Supp. 2d 167 (E.D.N.Y. 2002). . . . . . . . . . . . . . . . 9, 23

*People v. Rosario*, 78 N.Y.2d 583 (1991), *cert. denied* 502 U.S. 1109 (1992). . . . . . . . . . . . . . .11

*Payne v. County of Nassau*, 03-CV-1929, 2005 U.S. Dist. LEXIS 32397 (E.D.N.Y. Sept. 9, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Phelps v. City of New York*, 04 CIV. 8570, 2006 U.S. Dist. LEXIS 42926 (S.D.N.Y. June 29, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rothstein v. Carriere*, 373 F.3d 275 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Santoro v. Town of Smithtown*, 2005-11280, 2007 N.Y. App. Div. LEXIS 5894

(2d Dep't 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Sargent v. County of Nassau*, 04-4274, 2007 U.S. Dist. LEXIS 17474 (E.D.N.Y. Mar. 13,

2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Saucier v. Katz*, 533 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 20

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . .11

*Scott v. Harris*, 127 S. Ct. 1769 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Scotto v. Almenas,* 143 F.3d 105 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. .9

*Shabazz v. Coughlin*, 852 F.2d 697 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . 10, 11

*Smith v. City of New York*, 388 F. Supp. 2d 179 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . 11

*Smith v. Freeland*, 954 F.2d 343 (6th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Stokes v. City of New York*, 05-CV-0007, 2007 U.S. Dist. LEXIS 32787 (E.D.N.Y.

May 3, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sylvester v. City of New York*, 385 F. Supp. 2d 431 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . .24

*United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . .11

*United States v. Valez*, 796 F.2d 24 (2d Cir. 1986), *cert. denied*, 479 U.S. 1067 (1987). . . . . . . 11

*Wade v. Williams*, 96-2307, 1996 U.S. App. LEXIS 27293 (2d Cir. 1996) . . . . . . . . . . . . . . .13

*Wallace v. Kato*, 127 S. Ct. 1091 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Walker v. Youman*, 02-CV-05957, 2006 U.S. Dist. LEXIS 11472 (E.D.N.Y. Mar. 3, 2006). . . .13

- v -

*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . 9

*Weyant v. Okst,* 101 F.3d 845 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Zirlin v. Village of Scarsdale*, 365 F. Supp. 2d 477 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . 15

## STATUTES

Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

28 U.S.C. 1367(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

## **PRELIMINARY STATEMENT**

Plaintiff, Thomas Hartmann ("Plaintiff" or "HARTMANN"), brings an action under 42 U.S.C. §1983 for municipal violations based upon his contact with Nassau County Police Officers Karl Snelders ("SNELDERS") and Michael Knatz ("KNATZ") on March 12, 2004. HARTMANN alleges the following claims against the County of Nassau ("the County"), SNELDERS and KNATZ (hereinafter "the County Defendants"):  (1) Federal false arrest and false imprisonment; (2) Federal excessive use of force; (3) state law assault and battery; (4) state law negligence; and, (5) state law negligent hiring, retention, training and supervision.  These claims should be dismissed for the following reasons:

First, since HARTMANN named the County as a defendant, his claims against SNELDERS and KNATZ in their official capacities are redundant.

Second, probable cause for HARTMANN"s arrest and confinement existed.

Third, HARTMANN's excessive use of force claim should be dismissed because SNELDERS' application of force was objectively reasonable.

Fourth, SNELDERS and KNATZ are entitled to qualified immunity because it was objectively reasonable for them to believe that their actions were lawful in light of clearly established law and the information that they possessed at the time of the incident.

Fifth, because there are no Federal constitutional violations, the Court should not exercise supplemental jurisdiction over HARTMANN's state law claims.

Sixth, HARTMANN's assault and battery state law claims should be dismissed because there was probable cause for HARTMANN's arrest and confinement and SNELDERS' application of force was objectively reasonable.

1

Seventh, HARTMANN's state law negligence claim should be dismissed since the County Defendants have conceded that SNELDERS intentionally struck HARTMANN with a police vehicle.

Eighth, HARTMANN's state law negligent hiring, retention, training and supervision claim can not lie where HARTMANN has conceded that SNELDERS and KNATZ were acting within the scope of their employment as Nassau County Police Officers.

Thus, the County respectfully requests that the Court grant its motion, pursuant to Federal Rule of Civil Procedure 56 for judgment as a matter of law.

## PROCEDURAL HISTORY

On or about April 30, 2004, HARTMANN served a Complaint against Defendants, the County, Nassau County Police Department ("NCPD"), SNELDERS, KNATZ, Deputy Inspector Robert Turk ("TURK"), Lieutenant Thomas Zamojcin ("ZAMOJCIN"), Police Officer Kevin W. Smith ("SMITH"), Police Officer Philip Brady ("BRADY"), Detective Barry O. Franklin ("FRANKLIN"), Police Officer Thomas O. McCaffrey ("MCCAFFREY"), and John and Jane Does 1-15 under 42 U.S.C. § 1983 for alleged deprivation of HARTMANN's civil rights.  On June 16, 2004, the County Defendants answered. On June 14, 2005, HARTMANN served an Amended Complaint against the County Defendants. On July 5, 2005, the County Defendants answered.  On December 8, 2006, HARTMANN moved to amend his complaint a second time. On January 8, 2006, the County Defendants opposed that motion.  The motion is fully briefed and has not yet been decided by the Court.  On September 10, 2007, by letter to the Court, HARTMANN withdrew his "*Monell*"[1] municipal liability claims and discontinued the action against the NCPD, TURK, ZAMOJCIN, SMITH, BRADY, FRANKLIN, MCCAFFREY, and

---

[1] Pursuant to *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

John and Jane Does 1-15. *See Pl.'s Let.* (09/10/07) (ECF Doc. 66). The only remaining defendants are the County, SNELDERS and KNATZ.  The only remaining claims are: (1) Federal false arrest and false imprisonment; (2) Federal excessive use of force; (3) state law assault and battery; (4) state law negligence; and, (5) state law negligent hiring, retention, training and supervision.  The County now moves, pursuant to Federal Rule of Civil Procedure 56, for judgment as a matter of law.

## STATEMENT OF MATERIAL FACTS

In October of 2004, HARTMANN was approximately six feet and approximately two hundred and thirty pounds.  *See* 56.1 Statement, ¶ 1.  HARTMANN has a history of alcohol abuse, drug abuse, mental illness, depression, and attempted suicides.  *See* 56.1 Statement, ¶ 2-6.  HARTMANN gets violent if he drinks alcohol or ingests drugs.  *See* 56.1 Statement, ¶ 3.  HARTMANN also has a criminal record, including violent crimes and domestic violence, and has been sentenced to upstate prison on more than one occasion.  *See* 56.1 Statement, ¶¶ 9-10, 12.  HARTMANN has been known to carry weapons.  *See* 56.1 Statement, ¶ 11.

Following an incident where HARTMANN had an altercation with his wife, a Family Court stay away order of protection was issued in favor of his wife and against him that he violated during another altercation with his wife in September of 2003.  *See* 56.1 Statement, ¶¶ 13-16.  HARTMANN was arrested and pleaded guilty for violating that order of protection.  *See* 56.1 Statement, ¶¶ 17-18.

On March 11, 2004, HARTMANN was separated from his wife by way of a separation agreement having been separated since the year 2003.  *See* 56.1 Statement, ¶¶ 19-20.  On that date, after having consumed a few beers at a bar, HARTMANN contacted his wife by way of cell telephone and telephone at her Merrick residence and had arguments with her and threatened

3

her. *See* 56.1 Statement, ¶¶ 23-26, 34-35.  Also on that date, HARTMANN left numerous messages for his wife on her cell telephone voicemail and on her answering machine at her Merrick address where he cursed at his wife and threatened to physically harm and kill his wife and her family.  *See* 56.1 Statement, ¶¶ 25-26.  Although he should have been, HARTMANN was not taking his psychiatrist's prescribed medication for his mental illness. *See* 56.1 Statement, ¶¶ 7-8.

On March 11, 2004, after HARTMANN's wife received HARTMANN's threatening messages, she called 911, because she believed that he was trying to break into the Merrick residence and she was afraid of him; she wanted him arrested. *See* 56.1 Statement, ¶¶ 27-29. Nassau County police officers responded and during the times that HARTMANN called his wife by way of the telephone while she was at the Merrick residence on March 11, 2004, he spoke with those Nassau County police officers, and he cursed at them and threatened to kill Nassau County police officers in general.  *See* 56.1 Statement, ¶¶ 31-32.  A Caper alarm was thereafter installed in HARTMANN's wife's house on that date.  *See* 56.1 Statement, ¶ 30.

March 12, 2004 was a Friday.  *See* 56.1 Statement, ¶ 36.  On March 12, 2004, HARTMANN was the registered owner of a 2000 Black Lexus LX 470 Truck and he was operating that truck.  *See* 56.1 Statement, ¶¶ 37-38.   HARTMANN was wearing a blue long sleeve sweatshirt and dark blue sweatpants.  *See* 56.1 Statement, ¶ 39.  On that date, HARTMANN made telephone calls to his wife.  *See* 56.1 Statement, ¶ 40.

On March 12, 2004, the NCPD's Bureau of Special Operations ("BSO") police officers, including SNELDERS and KNATZ, were assigned to locate HARTMANN and to arrest him because he had threatened to kill his wife as well as NCPD police officers.  *See* 56.1 Statement,

4

¶¶ 41.  SNELDERS and KNATZ were aware that HARTMANN had threatened to kill his wife as well as NCPD police officers.  *See id.*   SNELDERS was also aware that a Caper alarm had been installed in HARTMANN's wife's house.  *See* 56.1 Statement, ¶ 43.

Prior to coming in contact with HARTMANN, SNELDERS and KNATZ were shown acopy of HARTMANN's photograph in order to assist them in locating him.   *See* 56.1 Statement, ¶ 47.   SNELDERS and KNATZ were told that HARTMANN was violent, possibly had a gun, was out of control, had shot up his house on a prior occasion, had threatened to kill his wife, had used knives in the past and was considered extremely dangerous.  *See* 56.1 Statement, ¶¶ 42, 51.   SNELDERS knew that HARTMANN had a prior criminal record, including violent crimes.  *See* 56.1 Statement, ¶¶ 44.

NCPD officers searched for HARTMANN at a variety of locations, during which time they went to the Long Beach Police Department and spoke with officers there.  *See* 56.1 Statement, ¶¶ 44.   The Long Beach Police Department's police officers told KNATZ who then told SNELDERS that HARTMANN was a drug abuser, was violent, had been crazy since he was sixteen years old, and that they hoped that KNATZ and his partner were wearing bulletproof vests since they would have trouble with HARTMANN.  *See* 56.1 Statement, ¶¶ 46, 51.

Eventually, SNELDERS and KNATZ were assigned to Brower Avenue where one of HARTMANN's relatives lived in case HARTMANN arrived there.  *See* 56.1 Statement, ¶ 48. HARTMANN had made arrangements to meet his brother Alex at his brother's house which was on the corner of Brower Avenue and Sunnyside Street in Oceanside at 4:30 P.M. so that they could go to Long Beach together.  *See* 56.1 Statement, ¶¶ 49, 55.

5

SNELDERS and KNATZ were parked at the Brower Avenue location for about a half an hour when HARTMANN showed up. *See* 56.1 Statement, ¶ 50. During the time that SNELDERS and KNATZ were parked at the Brower Avenue location waiting for HARTMANN, KNATZ disclosed to SNELDERS the information that he had learned about HARTMANN's background as well as KNATZ's prior work on the case. *See* 56.1 Statement, ¶ 51.

On March 12, 2004, HARTMANN arrived at his brother's house at approximately 3:45 P.M. and parked his car on the east side of Sunnyside Street on the side of his brother's house. *See* 56.1 Statement, ¶¶ 51 56, 101-102. It was clear and it was light outside. *See* 56.1 Statement, ¶ 53.

When HARTMANN arrived at his brother's house in Oceanside, he opened the door of his truck and stepped out when he saw two police officers in a blue Chevrolet Lumina on Brower Avenue making a left onto Sunnyside Street starting to come towards him, so he got back in his truck and started it, and left in a northerly direction down Sunnyside Street. *See* 56.1 Statement, ¶¶ 58-59, 62. HARTMANN's intent was to evade the police because he was aware that the police were looking for him in order to arrest him. *See* 56.1 Statement, ¶ 34, 63. HARTMANN knew that the blue Chevrolet Lumina was a police vehicle because it had a red light on top of it. *See* 56.1 Statement, ¶ 60.

HARTMANN led the police on a vehicle pursuit driving approximately 50-60 miles per hour and disobeying traffic signs and signals on residential streets. *See* 56.1 Statement, ¶¶ 60, 63-66. As SNELDERS and KNATZ chased HARTMANN's truck in their police vehicle, their lights and sirens were activated and KNATZ broadcast that HARTMANN was leading them in a

6

vehicle pursuit and requested assistance.  *See* 56.1 Statement, ¶¶ 67-68.   HARTMANN could hear the police sirens behind him as he fled from Brower Avenue to the point where he stopped his vehicle on Allen Avenue.  *See* 56.1 Statement, ¶¶ 69-70.

It was approximately five o'clock in the afternoon when HARTMANN brought his vehicle to a stop in a residential area in front of a residence on Allen Avenue and jumped out instantly near where Jamie Florio was at her home on Allen Avenue upstairs in her bedroom. *See* 56.1 Statement, ¶ 72-73, 87.

Because HARTMANN could not outrun the police in his truck, his intent was to alight from his vehicle and run away in order to elude the police. *See* 56.1 Statement, ¶ 71.  When HARTMANN jumped out of his vehicle, he saw that the police vehicle was behind his truck. *See* 56.1 Statement, ¶ 74.  KNATZ exited the police vehicle.  *See* 56.1 Statement, ¶ 75.  Instead of running away, HARTMANN was yelling, waving his arms and pointing at KNATZ.  *See* 56.1 Statement, ¶ 76.   KNATZ ran behind the police car and HARTMANN ran after him.  *See* 56.1 Statement, ¶ 77. HARTMANN was running around between the police car and his truck.  *See* 56.1 Statement, ¶ 78.

HARTMANN went back towards the front of his truck and SNELDERS started slowly moving the police car around the front of HARTMANN's truck.  *See* 56.1 Statement, ¶¶ 79-80. SNELDERS was seated in his police vehicle with his seatbelt fastened.  *See* 56.1 Statement, ¶ 81.

SNELDERS intentionally struck HARTMANN with the police vehicle at a slow rate of speed which caused HARTMANN to fall to the ground.   *See* 56.1 Statement, ¶¶ 82-83. SNELDERS ran over HARTMANN with the police vehicle.  *See* 56.1 Statement, ¶ 85.

7

SNELDERS' intent was to strike HARTMANN with the police vehicle but not to run him over. *See* 56.1 Statement, ¶ 84.   SNELDERS believed that HARTMANN possessed a weapon at the time that he intentionally struck HARTMANN with the police vehicle based upon the information that SNELDERS knew about HARTMANN's background, and the reason that HARTMANN was being sought for arrest.  *See* 56.1 Statement, ¶ 86.

HARTMANN was arrested and charged with one count of reckless driving, one count of resisting arrest, two counts of aggravated harassment in the second degree and two counts of menacing in the third degree.  *See* 56.1 Statement, ¶ 88.   Thereafter, HARTMANN was indicted by a grand jury on one count of criminal contempt in the first degree, four counts of aggravated harassment in the second degree, two counts of menacing in the third degree, one count of resisting arrest, one count of reckless endangerment in the second degree, and one count of reckless driving.  *See* 56.1 Statement, ¶ 89.  In accordance with a plea arrangement offered by the Nassau County District Attorney's Office, HARTMANN pleaded guilty under oath to criminal contempt in the second degree, resisting arrest and aggravated harassment in the second degree in satisfaction of the charges under the indictment and was sentenced to time served and three years concurrent probation. *See* 56.1 Statement, ¶ 90.  HARTMANN's guilty plea to the resisting arrest charge was in relation to the Nassau County police officers who were in pursuit of him on March 12, 2004.  *See* 56.1 Statement, ¶ 91.

### STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper if no genuine issue of material fact can be found in the pleadings, depositions, admissions or affidavits such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the burden of

establishing the absence of a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  "When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Western World Ins. Co. v. Stack Oil, Inc*., 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)).  The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture."  *See id.*; *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998).  In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers and depositions in favor of that party.  *See Anderson*,. 477 U.S. at 255.

Because no genuine issue of material fact can be found in the pleadings, depositions, admissions or affidavits, the County respectfully requests that the Court grant its motion for judgment as a matter of law.

POINT I

**BECAUSE HARTMANN NAMED NASSAU COUNTY AS A DEFENDANT,
HIS CLAIMS AGAINST SNELDERS AND KNATZ IN THEIR OFFICIAL
CAPACITIES SHOULD BE DISMISSED AS DUPLICATIVE**

The complaint names SNELDERS and KNATZ in their official capacities.  Plaintiff's claims against SNELDERS and KNATZ sued in their official capacities are duplicative, because HARTMANN has named the County as a Defendant.  *See e.g. Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("[T]he claim against police officer [defendants] in their official capacity is essentially a claim against the village;" affirming dismissal of official capacity claims against police officer defendants); *see also Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir.

9

1988) (stating that official capacity suits are "in all respects other than name, suits against a government entity") (*citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *Nogue v. City of New York*, No. 98-CV-3058, 1999 U.S. Dist. LEXIS 13201, at *23 n.13 (E.D.N.Y. Aug. 27, 1999); *Orange v. County of Suffolk*, 830 F.Supp. 701, 706-07 (E.D.N.Y. 1993).  Accordingly, the claims against SNELDERS and KNATZ in their official capacities must be dismissed as a matter of law.

POINT II
PROBABLE CAUSE FOR HARTMANN'S ARREST AND CONFINEMENT EXISTED

HARTMANN brings false arrest and false imprisonment claims against SNELDERS and KNATZ.  Because probable cause to arrest and confine HARTMANN existed and because he pleaded guilty to the crime for which he was arrested and confined, his false arrest and false imprisonment claims fail.  Accordingly, this aspect of HARTMANN's amended complaint must be dismissed as a matter of law.

False arrest and false imprisonment claims are analogous claims because the elements of both are the same under New York Law.  *See Wallace v. Kato*, 127 S. Ct. 1091, 1095 (2007); *see also Murray v. Williams*, 05 Civ. 9438, 2007 U.S. Dist. LEXIS 11321, at *(S.D.N.Y. Feb. 8, 2007).  In order to state a false arrest or false imprisonment claim, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement; and, (4) the confinement was not otherwise privileged or justified.  *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1998); *see also Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996); *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 551 (E.D.N.Y. 2004).

Under Section 1983, a false arrest or false imprisonment claim can not be sustained if

10

probable cause existed.  *See Singer*, 63 F.3d at 118 (probable cause is a complete defense in an action for false arrest); *see also Weyant*, 101 F.3d at 852 (stating "[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest"). Probable cause arises whenever an arresting officer "'has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'"  *See Singer,* 63 F.3d at 118 (*quoting O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993); *see also Brewster*, 349 F. Supp. 2d at 551 (*quoting Becker v. Ohio*, 379 U.S. 89, 91 (1964).  It is the Plaintiff's burden to show the absence of probable cause.  *See Sargent v. County of Nassau*, 04-4274, 2007 U.S. Dist. LEXIS 17474, at *15 (E.D.N.Y. Mar. 13, 2007).

Under the Federal "Collective Knowledge Doctrine," also known as New York's "Fellow Officer Rule," an arresting officer may rely upon other law enforcement officers' knowledge which is sufficient to justify probable cause to arrest.  *See Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) ("[F]or the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.'"); *see also United States v. Valez*, 796 F.2d 24 (2d Cir. 1986), *cert. denied*, 479 U.S. 1067 (1987) (affirming conviction and finding probable cause to arrest where police officer arrested defendant who met his Sergeant's description of a drug dealer, and defendant within a short period of time following a drug transaction was in the immediate area of the transaction); *Stokes v. City of New York*, 05-CV-0007, 2007 U.S. Dist. LEXIS 32787, at (E.D.N.Y. May 3, 2007) (granting summary judgment on false arrest and false imprisonment claim; under the "collective knowledge doctrine," one police officer is allowed to

11

rely upon knowledge collected by other police officers during the course of an investigation); *Phelps v. City of New York*, 04 CIV. 8570, 2006 U.S. Dist. LEXIS 42926, at *9-*10 (S.D.N.Y. June 29, 2006) (where one defendant police officer relied on statements of other police personnel and the instructions of his Sergeant, granting summary judgment on plaintiff's false arrest claims with respect to that defendant police officer); *Smith v. City of New York*, 388 F. Supp. 2d 179, 185-86 (S.D.N.Y. 2005); *People v. Rosario*, 78 N.Y.2d 583 (1991), *cert. denied* 502 U.S. 1109 (1992).  "Sometimes [an arresting officer's] authority to arrest a suspect is based on facts known only to his superiors or associates." *Valez*, 796 F.2d at 28; *see also People v. Rosario*, 78 N.Y.2d 583, 588 (1991), *cert. denied* 502 U.S. 1109 (1992) ("The rule has been applied whether the communication was between superior or fellow officers within the same department, different agencies or agencies at different levels within a State and between officials in different States as well as between Federal and State or local authorities.")   *Cf. United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) (conviction vacated where at the time of the stop and frisk, the information known to the arresting officers was based upon an NYPD dispatcher's notification based upon a 911 operator's information taken during a 911 call, and when the officers located the defendant, he was not engaged in, nor was there evidence that he had engaged in criminal activity).

As aforementioned, a finding of probable cause will defeat false arrest and false imprisonment claims. *See Cameron v. Fogarty*, 806 F.2d 380, 387-88 (2d Cir. 1986) (citing cases).  The existence of probable cause is reinforced by a grand jury indictment.  *See Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2d Cir. 2004); *Carson v. Lewis*, 35 F. Supp. 2d 250, 260-61 (E.D.N.Y. 1999) (citing cases).  Conviction after trial or by guilty plea establishes the existence

of probable cause and will bar a Section 1983 false arrest/false imprisonment claim. *See Wade v. Williams*, 96-2307, 1996 U.S. App. LEXIS 27293, at *2 (2d Cir. 1996); *Cameron v. Fogarty*, 806 F.2d 380, 386-87 (2d Cir. 1986); *McNeill v. City and State of New York*, 06-CV-4843, 2006 U.S. Dist. LEXIS 77085, at *6-*7 (E.D.N.Y. Oct. 24, 2006) (citing cases); *Walker v. Youman*, 02-CV-05957, 2006 U.S. Dist. LEXIS 11472, at *12-*13 (E.D.N.Y. Mar. 3, 2006); *Hernandez v. City of New York*, 00 Civ. 9507, 2004 U.S. Dist. LEXIS 23365, at *15 (S.D.N.Y. Nov. 22, 2004).

Here, the NCPD's BSO police officers SNELDERS and KNATZ were assigned to locate HARTMANN and to arrest him because he had threatened to kill his wife as well as NCPD police officers. *See* 56.1 Statement, ¶ 41. Probable cause existed to arrest HARTMANN for aggravated harassment in the second degree in violation of New York State Penal Law Section 240.30(1)[2] based upon the NCPD's collective knowledge; that being, HARTMANN's wife's 911 telephone call to the NCPD, HARTMANN's wife's supporting depositions, cassette tapes of HARTMANN's threats to harm his wife and her family left on her cell telephone voicemail and her home telephone answering machine, and HARTMANN's threats to Nassau County police officers when he called his wife's home telephone number and spoke with them while they were at his wife's residence responding to her 911 call. *See* 56.1 Statement, ¶¶ 23-27, 31-32. Therefore, there was reasonably trustworthy information sufficient for SNELDERS and KNATZ to believe that HARTMANN had committed the crime of aggravated harassment in the second degree in violation of New York State Penal Law Section 240.30(1). Thus, there was probable

13

---

[2] "A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she: 1. Either (a) communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm; or (b) causes a communication to be initiated by mechanical or electronic means or otherwise with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm." *See N.Y. P.L. § 240.30 (McKinney's 2007).*

cause for HARTMANN's arrest and confinement.    Notwithstanding, HARTMANN was indicted by a grand jury which reinforced the probable cause determination, and was ultimately convicted after guilty plea which establishes the existence of probable cause and bars a Section 1983 false arrest/false imprisonment claim. *See* 56.1 Statement, ¶¶ 88-90.   Accordingly, the County Defendants respectfully request that HARTMANN'S false arrest and false imprisonment claims be dismissed as a matter of law.

POINT III

HARTMANN'S EXCESSIVE USE OF FORCE CLAIM SHOULD BE
DISMISSED BECAUSE SNELDERS' APPLICATION OF FORCE
<u>WAS OBJECTIVELY REASONABLE</u>

HARTMANN brings a claim of excessive use of force.   Because SNELDERS' use of force was objectively reasonable under the facts and circumstances with which SNELDERS was faced and what SNELDERS knew at the time that the force was employed at the time of HARTMANN's arrest, HARTMANN's excessive use of force claim fails.    Accordingly, this aspect of HARTMANN's amended complaint must be dismissed as a matter of law.

Excessive force claims against law enforcement officials in connection an arrest, investigatory stop or other seizure are analyzed under the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Esmont v. City of New York*, 1371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005). The standard is an objective one, and is based upon the facts and circumstances of each case, without taking into account an officer's underlying intent or motivation. *See Graham*, 490 U.S. at 397; *see also Esmont*, 371 F. Sup. 2d at 214.

When examining excessive force allegations, the following factors must be taken into consideration: (1) the severity of the crime at issue; (2) whether or not a suspect poses a threat to safety; and, (3) whether or not a suspect actively resists or attempts to avoid arrest. *See Graham*,

14

490 U.S. at 396 (1989); *see also Esmont*, 371 F. Supp. 2d at 214.

What is objectively reasonable is judged by what the officers knew at the time that deadly force was employed. *See Zirlin v. Village of Scarsdale*, 365 F. Supp. 2d 477 (S.D.N.Y. 2005) (where police responded to a 911 call about a man in the woods carrying a knife, and where police spoke with civilian who told them that she had seen the man, and then pointed him out, and police were aware of recent threats of violence arising from an employee quarrel at the nearby Village Sanitation Department, use of force reasonable).

> The 'reasonableness' of a particular use of force must be judged
> from the perspective of a reasonable officer on the scene, rather than
> with the 20/20 vision of hindsight . . . . [t]he calculus of reasonableness
> must embody allowance for the fact that police officers are often forced
> to make split-second judgments -- in circumstances that are tense,
> uncertain, and rapidly evolving – about the amount of force that is
> necessary in a particular situation.

*Graham*, 490 U.S. at 397-98. Moreover, tactical complaints that an officer "should have used less lethal defensive tactics, taken more time to plan, retreated, or used a negotiator" do not establish a Fourth Amendment violation. *Bartsch v. City of Yakima*, 2006 U.S. Dist. LEXIS 5274, at *13-*15 (E.D. Wash. 2006) (where defendant officer, along with other officers, were investigating decedent's alleged infliction of a gun shot wound to his uncle's hand during a fight, and decedent became increasingly agitated, pulled out a knife, began yelling at the officers to shoot him, charged at the officers with the knife, and defendant fired a single shot into decedent's chest, killing him, defendant's actions were objective reasonable; granting defendants' summary judgment motion).

In *Smith v. Freeland*, 954 F.2d 343 (6th Cir. 1992), analogous to the case at bar, Plaintiff's son sped out of an apartment complex, and ran a stop sign. Officer Schulcz pursued

15

Plaintiff's son but rather than pull over, Plaintiff's son led the officer on a wild car chase. During the chase, Plaintiff's son crashed his car into the officer's car. Plaintiff's son eluded capture until he smashed into a fence and gate. As Plaintiff's son's car drove past the officer, Officer Schulcz pulled his gun and fired a shot at the vehicle, which struck Plaintiff's son in his right side, killing him. After analyzing the case using the Fourth Amendment "objective reasonableness" standard under Graham v. Connor, 490 U.S. 386 (1989), the Court affirmed the lower court's grant of summary judgment for the defense. The Court found that even though Plaintiff's son was unarmed, a car can be a deadly weapon and ruled that deadly force was necessary to prevent Plaintiff's son's escape and that Plaintiff's son posed a significant threat to others.

In another case analogous to the instant action, *Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991), Plaintiff's son, a robbery suspect, led police on a vehicle pursuit until his car spun out of control and came to a stop. Officer Andersen drew his gun and repeatedly told the three occupants of the car, one of which was Plaintiff's son, to raise their hands. Plaintiff's son initially complied, thereafter repeatedly reached down at least twice below the officer's sight line, the second time tipping his shoulder and reaching further down. After analyzing the case using the Fourth Amendment "objective reasonableness" standard under Graham v. Connor, 490 U.S. 386 (1989), considering the totality of the circumstances, the Court held that Officer Anderson's shooting of Plaintiff's son was reasonable. The officer could have reasonably believed that the Plaintiff's son was retrieving a gun and about to shoot, posing a threat of serious physical harm. Officer Anderson was justified in using deadly force to defend himself and others around him irregardless of the fact that Plaintiff's son was unarmed.

16

Finally, in a recent Supreme Court case similar to the case at bar, *Scott v. Harris*, 127 S. Ct. 1769 (2007), Plaintiff tried to avoid a traffic ticket by fleeing from Deputy Scott in his vehicle traveling at high speeds ignoring traffic laws.  Deputy Scott attempted to end the high speed vehicle pursuit by applying his bumper to the rear of Plaintiff's vehicle in order to cause him to spin to a stop.  Plaintiff lost control of his vehicle, drove down an embankment, overturned and crashed, rendering Plaintiff a quadriplegic.  The Court found that Deputy Scott's actions were reasonable and did not violate the constitution.

Here, under the *Graham v. Connor* analysis, SNELDERS' use of force was objectively reasonable under the totality of the facts and circumstances with which SNELDERS was faced and what SNELDERS knew at the time that the force was employed at the time of HARTMANN's arrest.    The crime at issue was severe since SNELDERS and KNATZ were assigned to locate HARTMANN and to arrest him because he had threatened to kill his wife, her family and NCPD police officers generally.  *See* 56.1 Statement, ¶ 41.  Moreover, HARTMANN actively attempted to evade arrest by leading the police on a vehicle pursuit down residential streets and acting unpredictably when he got out of his vehicle in a residential area.  *See* 56.1 Statement, ¶¶ 58-68, 71, 74-79.  Additionally, HARTMANN posed a threat to the safety of police officers on the scene as well as others by leading the police on a car chase throughout residential streets and acting erratically on the street in a residential area at approximately five o'clock on a Friday afternoon.  *See* 56.1 Statement, ¶¶ 58-68, 71, 74-79.    Finally, when SNELDERS intentionally struck HARTMANN with his police vehicle, he did so because he reasonably believed that HARTMANN possessed a weapon and that HARTMANN's use of deadly force against SNELDERS, other police officers and residents was imminent. *See* 56.1

17

Statement, ¶¶ 72-79, 82-86.  SNELDERS struck HARTMANN with the police vehicle at a slow rate of speed and his intent was to strike HARTMANN but not to run him over.  *See* 56.1 Statement, ¶¶ 83-84.

Based upon the information that SNELDERS knew about HARTMANN's background, and the reason that HARTMANN was being sought for arrest, it was objectively reasonable during the tense, uncertain and rapidly evolving circumstances for SNELDERS to believe that HARTMANN possessed a weapon and that HARTMANN's use of deadly force against him, other police officers and residents was imminent at that the time that SNELDERS made a split second decision about the amount of force necessary in the particular situation and intentionally struck HARTMANN with the police vehicle irregardless of whether HARTMANN actually had a weapon.  *See* 56.1 Statement, ¶¶ 58-68, 71, 74-79, 82-86; *see also Estate of Jackson v. City of Rochester*, 705 F. Supp. 779, 784 (W.D.N.Y. Jan. 31, 1989) ("[S]ociety [should not] expect or demand that a police officer always take extraordinary, life-threatening means to defend himself or face civil liability for failure to do so.  The super-cop of television and movies who disarms felons in hand-to-hand combat or with a well-placed shot to the hand should not be the standard by which we determine whether there has been a violation of a citizen's constitutional rights.").  Accordingly, the County Defendants respectfully request that HARTMANN'S excessive use force claim be dismissed as a matter of law.

POINT IV

**SNELDERS AND KNATZ ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE IT WAS OBJECTIVELY REASONABLE FOR THEM TO BELIEVE THAT THEIR ACTIONS WERE LAWFUL IN LIGHT OF CLEARLY ESTABLISHED LAW AND <u>THE INFORMATION THAT THEY POSSESSED</u>**

On December 8, 2006, HARTMANN moved to amend his complaint a second time asserting claims against SNELDERS in his individual capacity under Section 1983.  On January

18

8, 2006, the County Defendants opposed that motion.  The motion is fully briefed and has not yet been decided by the Court.  In the event that the Court should decide the motion in Plaintiff's favor, the County Defendants argue hereinafter that SNELDERS and KNATZ are entitled to qualified immunity because it was objectively reasonable for them to believe that their actions were lawful, in light of clearly established law and the information that they possessed.  Therefore, all claims against SNELDERS and KNATZ must be dismissed.

Qualified immunity is not a defense to liability, but rather immunity from a lawsuit.  *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002).  Government officials performing discretionary functions are entitled to qualified immunity from civil damages liability as long as their conduct did not violate clearly established constitutional rights, or it was objectively reasonable for such government officials to believe that their acts did not violate those rights.  *See*, *e.g.*, *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987) (citing cases); *Loria*, 306 F.3d 1271 at 1281; *Danielak v. City of New York*, 02-CV-2349, 2005 U.S. Dist LEXIS 40901, at *25-*26 (E.D.N.Y. Sept. 26, 2005).  In analyzing a whether a government official is entitled to qualified immunity, a Court must determine whether "'taken in the light most favorable to the party asserting the injury, the facts alleged show the [government official's] conduct violated a constitutional right.'"  *Loria*, 306 F.3d at 1281 (*quoting Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If the Court determines that a government official's conduct did not violate a constitutional right, no further inquiry is needed and the government official is entitled to qualified immunity.  *See Saucier*, 533 U.S. 194 at 201; *Loria* 306 F.3d at 1281. However, if the Court determines that the government official's actions violated a constitutional right, then the Court must decide whether the constitutional right

19

was clearly established at the time of the alleged violation.  *See Saucier*, 533 U.S. at 2001; *Loria*, 306 F.3d at 1281.  The standard is an objective reasonableness standard.   *See Anderson,* 483 U.S. at 639; *Loria*, 306 F.3d at 1282; *Danielak*, *2005 U.S. Dist* LEXIS, at \*26.

The availability of the "qualified immunity" defense depends on whether a reasonable government official could have believed his action to be lawful, in light of clearly established law and the information possessed.  *See Anderson,* 483 U.S. at 641; *Saucier*, 533 U.S. at 201-02 ("whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"); *Hunter v. Bryant*, 502 U.S. at 227 ("where the [government official] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed [] years after the fact."); *Loria*, 306 F.3d at 1281; *Danielak*, *2005 U.S. Dist LEXIS 40901*, at \*27-\*29.  A government official is entitled to qualified immunity if he reasonably believed that his actions did not violate the plaintiff's rights, even if that belief was mistaken.  *See Anderson,* 483 U.S. at 641 (remanded to determine whether FBI agent's could have believed that warrantless search of a home comported with the constitution, even though it did not); *Saucier*, 533 U.S. at 205, 208-09 (finding that military police officer was entitled to qualified immunity because a reasonable officer could have believed that his actions were justified); *Hunter*, 502 U.S. at  227-29 (finding that the Federal agents were "entitled to qualified immunity because their decision was reasonable, even if mistaken"); *Loria*, 306 F.3d at 1282 (finding no qualified immunity for police officers who entered apartment without warrant, and no qualified immunity for police officer whose actions were not based upon probable cause, but because probable cause to arrest existed, qualified immunity for police officer who issued appearance ticket); *Danielak*, *2005 U.S. Dist LEXIS*,  at

20

\*28-29 (finding police officers were entitled to qualified immunity from false arrest and false imprisonment claims because there was it was objectively reasonable for them to believe that probable cause existed based on the circumstances).

Here, SNELDERS and KNATZ were assigned to locate HARTMANN and to arrest him because he had threatened to kill his wife, her family and NCPD police officers.  *See* 56.1 Statement, ¶ 41.   As previously argued heretofore, probable cause existed for HARTMANN's arrest and confinement.   Moreover, HARTMANN actively attempted to avoid arrest by leading the police on a vehicle pursuit on residential streets and acting unpredictably when he got out of his vehicle in a residential area.  *See* 56.1 Statement, ¶¶ 58-68, 71, 74-79.   Additionally, HARTMANN posed a threat to the safety of police officers on the scene as well as others by leading the police on a car chase throughout residential streets and acting erratically on the street in a residential area at approximately five o'clock on a Friday afternoon.  *See* 56.1 Statement, ¶¶ 58-68, 71, 74-79.

Based upon the information that SNELDERS knew about HARTMANN's background including the fact that he used drugs, had a prior criminal record, including violent crimes, and was possibly armed and dangerous, and the fact that HARTMANN was being sought for arrest because he had threatened to kill his wife, her family and Nassau County police officers, it was objectively reasonable during the tense, uncertain and rapidly evolving circumstances for SNELDERS to believe that HARTMANN possessed a weapon and that HARTMANN's use of deadly force against him, other police officers and residents was imminent at the time that SNELDERS made a split second decision about the amount of force necessary in the particular

21

situation and intentionally struck HARTMANN with the police vehicle irregardless of whether HARTMANN actually had a weapon.  *See* 56.1 Statement, ¶¶ 2, 41-43, 46-47, 51, 58-68, 71, 74-79-86.

Accordingly, based upon the totality of the facts and circumstances, there was reasonably trustworthy information sufficient for SNELDERS and KNATZ to believe that HARTMANN had committed the crime of aggravated harassment in the second degree and thus there was probable cause for his arrest and confinement.  Moreover, HARTMANN's plea of guilty to the crimes for which he was arrested establishes the existence of probable cause.  In addition, it was objectively reasonable for SNELDERS to believe that the amount of force he used under the facts and circumstances with which SNELDERS was faced and what SNELDERS knew at the time that the force was employed at the time of HARTMANN's arrest was not excessive.  Thus, it was objectively reasonable for SNELDERS and KNATZ to believe that their actions were lawful, in light of clearly established law and the information they possessed.  Therefore, qualified immunity shields SNELDERS and KNATZ from liability with respect to all claims in this civil action and the claims against SNELDERS and KNATZ must be dismissed.

POINT V
BECAUSE THERE ARE NO FEDERAL CONSTITUTIONAL VIOLATIONS,<br>THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION

HARTMANN brings state law claims of assault and battery, negligence, and negligent hiring, retention, training and supervision. Because there are no Federal constitutional violations, there is no independent basis for Federal jurisdiction and the Court should decline to exercise supplemental jurisdiction over HARTMANN's state law claims.  *See* 28 U.S.C. 1367(c)(3); *see also Hartline v. Gallo*, 03 Civ. 1974, 2006 U.S. Dist. LEXIS 75849, at *31 (E.D.N.Y. Sept. 30, 2006);  *Payne v. County of Nassau*, 03-CV-1929, 2005 U.S. Dist. LEXIS 32397, at *19

22

(E.D.N.Y. Sept. 9, 2005); *Otero v. Town of Southampton*, 194 F. Supp. 2d 167, 181 (E.D.N.Y. 2002). Accordingly, the County respectfully requests that Plaintiff's state law claims be dismissed. Notwithstanding, should the Court determine that Federal Constitutional violations exist or that the Court shall exercise supplemental jurisdiction over Plaintiff's state law claims, those claims are addressed hereinafter.

POINT VI

PLAINTIFF'S STATE LAW ASSAULT AND BATTERY CLAIMS SHOULD BE DISMISSED BECAUSE THERE WAS PROBABLE CAUSE FOR HARTMANN'S SEIZURE AND SNELDERS' APPLICATION OF FORCE WAS REASONABLE

Plaintiff brings assault and battery state law claims. Because there was probable cause for HARTMANN's arrest and confinement and because SNELDERS' application of force was objectively reasonable, Plaintiff's assault and battery state law claims fail. Accordingly, the County Defendants respectfully request that this aspect of Plaintiff's amended complaint be dismissed as a matter of law.

Assault and battery claims under New York law are analogous to excessive use of force claims under the United States Constitution's Fourth Amendment. *See Cosby v. City of White Plains*, 04 Civ. 5829, 2007 U.S. Dist. LEXIS 23770, at *18 (S.D.N.Y. Feb. 9, 2007). An assault and battery is an intentional wrongful use of force, without consent, that placed an individual in imminent apprehension of harmful or offensive bodily contact. *See Cunningham v. U.S.*, 472 F. Supp. 2d 366, 380-81 (E.D.N.Y. 2007); *Cosby*, 2007 U.S. Dist. LEXIS 23770, at *17-*18. In the context of a seizure, so long as there was probable cause for the seizure and the force employed was objectively reasonable, a claim of assault and battery will not stand. *See Cunningham*, 472 F. Supp. 2d at 381 (citing cases). Here, as argued heretofore, there was probable cause for Plaintiff's arrest and confinement, and any force SNELDERS employed was

23

objectively reasonable in light of the totality of the facts and circumstances with which SNELDERS was faced and what SNELDERS knew at the time that the force was employed at the time of HARTMANN's arrest.  Therefore, Plaintiff's assault and battery claims must be dismissed as a matter of law.

POINT VII

**PLANTIFF'S STATE LAW NEGLIGENCE CLAIM MUST BE DISMISSED SINCE THE COUNTY DEFENDANTS HAVE CONCEDED THAT SNELDERS <u>INTENTIONALLY STRUCK HARTMANN WITH A POLICE VEHICLE</u>**

Plaintiff brings a state law claim of negligence.  Since the County Defendants have conceded that Plaintiff was intentionally struck with a police vehicle, Plaintiff's state law claim of negligence fails. *See* 56.1 Statement, ¶¶ 82-86.  Accordingly, the County Defendants respectfully request that this aspect of HARTMANN's amended complaint be dismissed as a matter of law.

Where an actor's conduct is intentional, a negligence claim will not lie.  *See Bayles v. Manns*, 05-2325, 2006 U.S. App. LEXIS 2728, at *3-*4 (2d Cir. 2006) (affirming the district court's granting of summary judgment to defendant Martucci on negligence claims where his conduct was intentional).  Even if injuries are inflicted inadvertently, once intentional conduct is established, negligence claims must be dismissed because negligence claims are legally incompatible with intentional assault claims.  *See Brown v. Ingram*, 04-CV-6074, 2007 U.S. Dist. LEXIS 25153, at *32-*33 (W.D.N.Y. Apr. 4, 2007) (citing cases); *see also Sylvester v. City of New York*, 385 F. Supp. 2d 431, 438-439 (S.D.N.Y. 2005); *Oliver v. Cuttler*, 968 F.Supp 83, 92 (E.D.N.Y. 1997); *Merzon v. County of Suffolk, et al.*, 767 F.Supp 432, 449 (E.D.N.Y. 1991) (quoting *Rafferty v. Arnot Ogden Memorial Hosp.*, 140 A.D.2d 911 (3d Dep't 1988)).

Here, the County Defendants have conceded that HARTMANN was intentionally struck

24

with a police vehicle when SNELDERS reasonably believed that HARTMANN possessed a weapon and that it was imminent that HARTMANN would use deadly force against him, other police officers and residents.  *See* 56.1 Statement, ¶¶ 2, 41-43, 46-47, 51, 58-68, 71, 74-79-86. Accordingly, since the County Defendants have admitted intentional conduct, HARTMANN'S negligence claim must be dismissed as a matter of law.

POINT VIII
PLAINTIFF'S STATE LAW NEGLIGENT HIRING, RETENTION, TRAINING<br>AND SUPERVISION CLAIM CAN NOT LIE WHERE SNELDERS AND KNATZ<br><u>WERE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT</u>

To the extent that Plaintiff has alleged a state law claim of negligent hiring, retention, training and supervision, that claim must be dismissed as a matter of law.   Notably, Plaintiff has dismissed his Federal *"Monell"* municipal liability claims.

A claim for negligent hiring, retention, training and supervision can only proceed against an employer where an employee is shown to be acting *outside* the scope of his or her employment.  *See Hill v. City of New York*, 03 CV 1283, 2005 U.S. Dist. LEXIS 38926, at *35 (E.D.N.Y. Dec. 29, 2005); *Griffin v. City of New York*, 287 F. Supp. 2d 392, 397-98 (S.D.N.Y. 2003); *Santoro v. Town of Smithtown*, 2005-11280, 2007 N.Y. App. Div. LEXIS 5894, at *4 (2d Dep't 2007); *Ashley v. City of New York*, 779 N.Y.S.2d 502, 503 (2d Dep't 2004).  Here, the County Defendants concede in their answer and Plaintiff states in his amended complaint that the County employees were acting *within* the scope of their employment; therefore, Plaintiff's negligent hiring, retention, training and supervision claim must be dismissed as a matter of law.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, it is respectfully requested that this Court enter an Order granting judgment as a matter of law in favor of the County Defendants, pursuant to Federal Rule of Civil Procedure 56, and for such other and further relief as this Court deems just and

25

proper.

Dated:  Mineola, New York
         October 29, 2007

                                    LORNA B. GOODMAN
                                    Nassau County Attorney
                                         /smm/

                      By      _____

                                    Sondra M. Mendelson (SMM 0215)
                                    Deputy County Attorney
                                    One West Street
                                    Mineola, New York 11501

26