UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
THOMAS HARTMAN,

        Plaintiff,

    - against -

COUNTY OF NASSAU, et al.,

        Defendants.
------------------------------------------------------X

**MEMORANDUM
AND   O R D E R**

04 CV 1784 (CLP)

On April 3, 2004, plaintiff Thomas Hartman filed an action pursuant to 42 U.S.C. § 1983

against the County of Nassau, the Nassau County Police Department (the "County defendants"),

and eight individually named Nassau County police officers, alleging that the defendant officers

used deadly force in apprehending the plaintiff, causing him physical injuries and emotional

distress, and that it was the policy, practice, or custom of the defendants to inadequately train and

supervise its officers, and to inadequately investigate citizen complaints of police misconduct.

By Notice of Motion dated December 8, 2006, plaintiff moves to amend his Complaint to clarify

that the claims asserted against one of the defendants, Nassau County Police Officer Carl

Snelders, are asserted against him in both his official and individual capacities. By Notice of

Motion dated October 29, 2007, defendants move for summary judgment in their favor on

plaintiff's federal claims of false arrest and imprisonment and excessive force, and on his state

law claims of negligence, assault and battery. For the reasons set forth below, plaintiff's motion

to amend is granted and defendants' motion for summary judgment is granted in part and denied

in part.

## FACTUAL AND PROCEDURAL BACKGROUND

According to plaintiff's proposed Second Amended Complaint ("Prop. Compl."), on March 12, 2006, Officer Snelders was a Nassau County police officer, assigned to the Bureau of Special Operations ("BSO"). (Prop. Compl. ¶¶ 18-26; Pl.'s Mem.[1] at 2).

On March 11, 2006, plaintiff violated a Family Court order of protection that had been issued to protect his wife following an altercation between the two. (Pl.'s 56.1 Stmnt ¶¶ 14-15, 23-29; Defs.' 56.1 Stmnt ¶¶ 12-15, 23-29).[2] It was not the first time plaintiff had violated the order of protection. (Pl.'s 56.1 Stmnt ¶¶ 16-18, 21; Defs.' 56.1 Stmnt ¶¶ 16-18, 21). On this occasion, plaintiff telephoned his wife at her Merrick residence, during the course of which the two argued and plaintiff threatened to physically harm his wife. (Pl.'s 56.1 Stmnt ¶¶ 23-25; Defs.' 56.1 Stmnt ¶¶ 23-25). Plaintiff had consumed a few beers at a bar that afternoon; he tested positive for alcohol at the Nassau County Medical Center the next day. (Pl.'s 56.1 Stmnt ¶¶ 34-35; Defs.' 56.1 Stmnt ¶¶ 34-35). Plaintiff continued to call his wife, leaving messages on her answering machine at her Merrick residence in which he threatened to physically harm and kill her and her family. (Pl.'s 56.1 Stmnt ¶ 26; Defs.' 56.1 Stmnt ¶ 26). After receiving these messages, plaintiff's wife called 911 because she allegedly believed that plaintiff was trying to break into the Merrick residence and she wanted him to be arrested. (Pl.'s 56.1 Stmnt ¶ 27; Defs.' 56.1 Stmnt ¶¶ 27-29). Plaintiff denies that he was trying to break into his wife's Merrick

---

[1]Citations to "Pl.'s Mem." refer to Plaintiff Thomas Hartman's Memorandum of Law in Support of Motion to Amend Complaint, filed December 8, 2006.

[2]Citations to "Pl.'s 56.1 Stmnt" refer to plaintiff's Local Rule 56.1 Statement of Material Facts, filed November 30, 2007. Citations to "Defs.' 56.1 Stmnt" refer to defendants' Local Rule 56.1 Statement of Material Facts, filed October 29, 2007.

residence. (Pl.'s 56.1 Stmnt ¶¶ 28-29). On one occasion when plaintiff called his wife, she was with Nassau County police officers who had responded to her 911 call. (Pl.'s 56.1 Stmnt ¶ 31; Defs.' 56.1 Stmnt ¶ 31). Plaintiff spoke to those officers and threatened to kill them. (Pl.'s 56.1 Stmnt ¶¶ 31-32; Defs.' 56.1 Stmnt ¶¶ 31-32).

On March 12, 2006, Officer Snelders and others, including Snelders' partner, Officer Michael Knatz, were assigned to locate and arrest plaintiff based on information that plaintiff was alleged to have verbally threatened his wife and another police officer on the telephone the prior evening. (Pl.'s Mem. at 3; Pl.'s 56.1 Stmnt ¶ 41; Defs.' 56.1 Stmnt ¶ 41). According to Officer Snelders, he did not know the facts underlying the reason for the arrest, but he was aware that the potential charges faced by plaintiff were misdemeanors. (Pl.'s Mem. at 3 (citing Snelders Tr.[3] at 102-03); Pl.'s 56.1 Stmnt ¶ 41; Defs.' 56.1 Stmnt ¶ 41). Officer Snelders also knew that plaintiff had a prior criminal record, which included violent crimes. (Pl.'s 56.1 Stmnt ¶¶ 9-18, 44; Defs.' 56.1 Stmnt ¶¶ 9-18, 44).

Based on information received from members of the Long Beach Police Department during a conversation shortly before coming into contact with plaintiff, Officer Knatz knew that plaintiff was a drug abuser, was violent, "had been crazy since he was sixteen years old," and furthermore, Officer Knatz was advised to wear a bulletproof vest "since they would have trouble with [plaintiff]," all of which information Officer Knatz later shared with Officer Snelders. (Pl.'s 56.1 Stmnt ¶¶ 45-46, 51; Defs.' 56.1 Stmnt ¶¶ 45-46, 51). Indeed, plaintiff has a history of drug and alcohol abuse (Pl.'s 56.1 Stmnt ¶ 2; Defs.' 56.1 Stmnt ¶ 2), and there is evidence to suggest

---

[3]Citations to "Snelders Tr." refer to the deposition transcript of Karl N. Snelders, taken May 18, 2005, attached as Exhibit C to Pl.'s Mem.

that he has a propensity for violence when he drinks alcohol or ingests drugs. (Pl.'s 56.1 Stmnt ¶ 3; Defs.' 56.1 Stmnt ¶ 3).

Plaintiff also has a history of depression and mental illness, has been diagnosed with mental disorders (Pl.'s 56.1 Stmnt ¶ 6; Defs.' 56.1 Stmnt ¶ 6), and has been prescribed medication for his mental illness by a psychiatrist, Dr. Serafettin Tombuloglu. (Pl.'s 56.1 Stmnt ¶ 7; Defs.' 56.1 Stmnt ¶ 7). However, prior to March 12, 2004, plaintiff stopped taking the prescription medication because he did not feel that he needed it and he disliked the side effects. (Pl.'s 56.1 Stmnt ¶ 8; Defs.' 56.1 Stmnt ¶ 8).

At some point, Officer Snelders received information that plaintiff was in the vicinity of a location on Brower Avenue in Oceanside. (Pl.'s Mem. at 3; Pl.'s 56.1 Stmnt ¶ 48; Defs.' 56.1 Stmnt ¶ 48). Officer Snelders and Officer Knatz were parked in their vehicle, an unmarked blue Chevy Lumina, when they saw what Snelders believed to be the SUV operated by plaintiff drive past the police vehicle and turn onto an adjacent street. (Pl.'s Mem. at 3). The two officers placed a red light on the dashboard of their vehicle and followed plaintiff around the corner. (Id.) According to Officer Snelders, he observed plaintiff exit his SUV and walk toward the rear of the vehicle, reaching into his waistband and stating, "You better shoot me before I shoot you." (Id. at 3-4; Snelders Tr. at 128-29). Officer Snelders believed that plaintiff was reaching for a gun in his waistband. (Pl.'s Mem. at 4; Snelders Tr. at 129). Officer Knatz testified that Officer Snelders told him "[plaintiff] is reaching for something," and that Knatz saw plaintiff reach inside his waistband. (Knatz Tr.[4] at 74, 88, 96, 120). Later, when he approached plaintiff on the

---

[4]Citations to "Knatz Tr." refer to the deposition transcript of Michael Knatz, taken May 25, 2005, attached as Exhibit D to Pl.'s Mem.

ground, Knatz asked plaintiff "where the gun was." (Id. at 117). According to plaintiff, however, Officer Snelders did not see anything in plaintiff's waistband, did not see any bulge or the outline or silhouette of anything in plaintiff's pants, and did not see any objects in either of plaintiff's hands. (Pl.'s Mem. at 4). When the police vehicle was approximately 10 feet from him, plaintiff turned back and reentered the SUV. (Id.) As the officers drove alongside the vehicle, plaintiff allegedly drove off and the officers followed. (Id. at 4-5; Pl.'s 56.1 Stmnt ¶ 62; Defs.' 56.1 Stmnt ¶ 62). Plaintiff led the police on a vehicle pursuit in an attempt to evade capture. (Pl.'s 56.1 Stmnt ¶¶ 63-64, 68; Defs.' 56.1 Stmnt ¶¶ 63-64, 68). Plaintiff notes that even though the officers claimed they felt threatened, there was no radio broadcast indicating that they believed plaintiff had a weapon. (Pl.'s Mem. at 5).

After a brief pursuit, plaintiff stopped his vehicle on Allan Avenue, in a residential neighborhood, exited the car, and walked back toward the driver's side of the police vehicle. (Id.) Again, plaintiff allegedly threatened the officers verbally before returning to his vehicle. (Id.) Rather than unholstering his weapon, Officer Snelders drove the police vehicle slowly toward plaintiff as plaintiff moved towards the front of his vehicle. (Id.; Pl.'s 56.1 Stmnt ¶¶ 79-80; Defs.' 56.1 Stmnt ¶¶ 79-80). The officer contends that when he saw plaintiff place his hand in his waistband and then remove it, the officer "gunned his engine and cut the wheel to the right," striking plaintiff with the right front side of the police car. (Pl.'s Mem. at 5; Pl.'s 56.1 Stmnt ¶¶ 82-83, 85; Defs.' 56.1 Stmnt ¶¶ 82-83, 85). The officer conceded that it was his intention to hit plaintiff with the car. (Pl.'s Mem. at 6; see also Pl.'s 56.1 Stmnt ¶ 84; Defs.' 56.1 Stmnt ¶ 84). After the officers' vehicle struck plaintiff, running over his legs, the police vehicle came to rest on the front lawn of one of the homes on Allan Avenue. (Pl.'s Mem. at 6).

Plaintiff disputes many of the facts asserted by the officers, contending that he never threatened the officers or engaged in any confrontation with them. (Id. at 7; see also Pl.'s 56.1 Stmnt ¶ 76). Instead, plaintiff claims that he was struck from behind while he was running away from the officers. (Pl.'s Mem. at 7-8).

On June 15, 2005, plaintiff was given permission to file an Amended Complaint, based on the stipulation of the parties, which added various state law claims against Nassau County[5] and Officer Snelders, including claims for negligence, assault, and battery. (See Am. Compl.[6] ¶¶ 88-90, 95, 99). According to plaintiff, the amended claims "made clear that defendant Snelders was being sued individually" based on the evidence that demonstrated that he intentionally battered and assaulted plaintiff with his vehicle. (See Pl.'s Mem. at 1-2). Plaintiff further contends that after the Amended Complaint was filed, he realized that there were certain internal inconsistencies in that even though the claims were brought against Snelders in his individual capacity, paragraph 3 of the Amended Complaint had not been changed to reflect that same fact. (See id.). Accordingly, plaintiff now moves to amend his Complaint again to make clear that he is suing defendant Snelders in his individual capacity.

Defendants contest the plaintiff's assertion that he made it clear in his Amended Complaint that the claims alleged were brought against Officer Snelders in his individual capacity, noting that the allegations in the Amended Complaint were based on conduct that

---

[5] By letter dated September 10, 2007, plaintiff agreed to withdraw plaintiff's Monell claims and the rest of the claims against all defendants except for Officers Snelders and Knatz.

[6] Citations to "Am. Compl." refer to plaintiff's Amended Complaint, filed June 14, 2005.

occurred in the officers' capacity as police officers, "not as individuals." (Defs.' Opp.[7] at 1 (citing Am. Compl. ¶ 3)). Defendants contend that the Amended Complaint made it clear that Officer Snelders was acting in the course of his employment for Nassau County. (Id. (citing Am. Compl. ¶¶ 40-41)).

By Notice of Motion dated October 29, 2007, defendants move for summary judgment in their favor on plaintiff's federal claims of false arrest and imprisonment and excessive force, and on his state law claims of negligence, assault, and battery.

For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part; plaintiff's motion to amend is granted.


## SUMMARY JUDGMENT MOTION

Defendants Snelders, Knatz, and the County of Nassau ("County") move for summary judgment, seeking to dismiss all of plaintiff's claims.


A. Standards

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston

---

[7]Citations to "Defs.' Opp." refer to Nassau County Defendants' Memorandum of Law In Opposition to Plaintiff's Motion to Amend the Complaint.

7

v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating that summary judgment "is a drastic remedy and should be applied sparingly"), the Court should not grant summary judgment unless "it is quite clear what the truth is [and] that no genuine issue remains for trial." Auletta v. Tully, 576 F. Supp. 191, 194 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir. 1999) (stating that "[w]hen considering a motion for summary judgment the court must draw all factual inferences and resolve all ambiguities in favor of the nonmoving party").

Once the moving party discharges its burden of proof under Rule 56(c) of the Federal Rules of Civil Procedure, the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248 (internal citation omitted).

In reversing a grant of summary judgment, the Second Circuit noted that the "[t]rial

court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995) (quoting Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994)).


B.  False Arrest and False Imprisonment Claims

Defendants move for summary judgment on plaintiff's claims of false arrest and false imprisonment, contending that because there was probable cause to arrest and confine Hartman, these claims must be dismissed.

In order to bring an action under Section 1983, plaintiff must allege that the defendants, acting under the color of state law, deprived the plaintiff of a right guaranteed by the Constitution or the laws of the United States.  42 U.S.C. § 1983.  See Katz v. Klehammer, 902 F.2d 204, 206 (2d Cir. 1990); Camacho v. City of New York Office of Child Support, No. 05 CV 2002, 2006 WL 2642195, at *1 (S.D.N.Y. Sept. 14, 2006) (quoting Katz v. Klehammer, 902 F.2d at 206). Claims of false arrest, false imprisonment, and malicious prosecution in violation of the Fourth Amendment have been recognized as deprivations of rights cognizable in a Section 1983 action. See Albright v. Oliver, 510 U.S. 266, 274 (1994); Singer v. Fulton County Sheriff, 63 F.3d 110, 116-117 (2d Cir. 1995), cert. denied, 517 U.S. 1189 (1996); Houston v. New York City Transit Auth., No. 93 CV 1291, 1996 WL 173128, at *3 (E.D.N.Y. Apr. 10, 1996).  Moreover, an unreasonable "seizure" by a state actor in violation of the Fourth Amendment may be pursued as a claim in a Section 1983 suit.  See Brower v. County of Inyo, 489 U.S. 593, 599 (1989); Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997), cert. denied, 522 U.S. 1115 (1998).  For purposes of

9

evaluating a Section 1983 action based on claims of false arrest and false imprisonment, courts in this circuit look to the elements of a false arrest claim under state law.[8] See Singer v. Fulton County Sheriff, 63 F.3d at 118; Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992); Labensky v. County of Nassau, 6 F. Supp. 2d 161, 176 (E.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d Cir. 1999); Smith v. City of New York, 388 F. Supp. 2d 179, 184 (S.D.N.Y. 2005).

1. The Elements of a False Arrest/False Imprisonment Claim

False arrest and false imprisonment are synonymous causes of action because the elements of false arrest and false imprisonment claims are identical under New York law. Murray v. Williams, No. 05 CV 9438, 2007 WL 430419, at *5 (S.D.N.Y. Feb. 8, 2007) (citing Covington v. City of New York, 171 F.3d 117, 125 (2d Cir.), cert. denied, 528 U.S. 946 (1999)). In order to establish a claim for false arrest under New York State law, plaintiff must prove the following four elements:

(1) that defendant intended to confine plaintiff;

(2) that plaintiff was conscious of the confinement;

(3) that plaintiff did not consent to the confinement; and

(4) that the confinement was not otherwise privileged.

Singer v. Fulton County Sheriff, 63 F.3d at 118 (citing Broughton v. State, 37 N.Y.2d 451, 456, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87, 93, cert. denied, 423 U.S. 929 (1975)); Smith v. City of New York, 388 F. Supp. 2d at 184.

---

[8]The torts of false arrest and false imprisonment are largely synonymous. See 59 N.Y. Jur. 2d, False Imprisonment § 1 (2008). "Every false arrest is itself a false imprisonment, with the imprisonment commencing at the time of the arrest." Blanchfield v. State, 104 Misc. 2d 21, 24, 427 N.Y.S.2d 682, 685 (Ct. Cl. 1980).

Applying these four criteria to the instant case, this Court finds that there is no dispute as to the first three elements of the claim. The defendant officers arrested plaintiff with the intent to confine him; plaintiff was clearly conscious of the fact of his arrest; and plaintiff protested rather than consenting to the arrest.

As for the fourth element, courts have held that although "an arrest without a warrant is presumed unlawful," the defendant can establish a legal justification for the arrest, and thus defeat a constitutional claim for false arrest, by demonstrating that there was probable cause for the arrest. Little v. Massari, 526 F. Supp. 2d 371, 374-75 (E.D.N.Y. 2007); see also Pierson v. Ray, 386 U.S. 547, 557 (1967) (holding that in a Section 1983 action, where there is probable cause for a challenged arrest, a law enforcement officer cannot be found to have violated the arrestee's rights), rev'd in part on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Zanghi v. Inc. Vill. of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985) (holding that "[i]t is abundantly clear that a finding of probable cause will defeat state tort claims of false arrest, false imprisonment and malicious prosecution"); cf. Broughton v. State, 37 N.Y.2d at 458, 335 N.E.2d at 315, 373 N.Y.S.2d at 94 (holding that "[w]henever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful"). Indeed, "'probable cause serves as a complete defense to the charges of false arrest and malicious prosecution.'" Matthews v. City of New York, No. 02 CV 715, 2006 WL 842392, at *5 (E.D.N.Y. Mar. 27, 2006) (quoting Graebe v. Falcetta, 726 F. Supp. 36, 38 (E.D.N.Y. 1989), aff'd, 946 F.2d 883 (2d Cir. 1991)).

Thus, where, as here, the arrest was effected without a warrant, the focus of the courts' analyses in determining whether a plaintiff has satisfied this fourth element in a claim for false

11

arrest is on whether the arrest was based on probable cause.  See Little v. Massari, 526 F. Supp.

2d at 374-75; Houston v. New York City Transit Auth., 1996 WL 173128, at *4; Niemann v.

Whalen, 911 F. Supp. 656, 666 (S.D.N.Y. 1996); Augustine v. Reid, 882 F. Supp. 50, 52

(E.D.N.Y.), aff'd, 99 F.3d 402 (2d Cir. 1995).  Probable cause exists "when the arresting officer

has 'knowledge or reasonably trustworthy information sufficient to warrant a person of

reasonable caution in the belief that an offense has been committed by the person to be

arrested.'" Dzinanka v. County of Suffolk, 932 F. Supp. 59, 62 (E.D.N.Y. 1996) (quoting

Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989)); see also Golino v. New

Haven, 950 F.2d 864, 870 (2d Cir. 1991), cert. denied, 505 U.S. 1221 (1992).

In order to establish probable cause, there must be a "probability or a substantial chance

of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 245

n.13 (1983); Labensky v. County of Nassau, 6 F. Supp. 2d at 176.  It is not necessary that the

officers show evidence "'beyond a reasonable doubt,'" which is the standard required for

criminal conviction; "[n]or do police officers need to demonstrate that it is more probable than

not [that] an offense has been committed to make a prima facie showing of criminal activity."

Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 354 (S.D.N.Y. 1992) (citing United

States v. Ginsberg, 758 F.2d 823 (2d Cir. 1985)), aff'd, 993 F.2d 1534 (2d Cir.), cert. denied, 510

U.S. 817 (1993).

The existence of probable cause is a question for the jury where there is a dispute

regarding the events leading to the arrest and where the question is factual in nature. See, e.g.,

Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Moore v. Comesanas, 32 F.3d 670, 673 (2d

Cir. 1994); Williams v. City of New York, No. 05 CV 10230, 2007 WL 2214390, at *6

(S.D.N.Y. July 26, 2007) (quoting <u>Murphy v. Lynn</u>, 118 F.3d at 947); <u>see also</u> <u>Collom v. Inc.</u> <u>Vill. of Freeport, N.Y.</u>, 691 F. Supp. 637, 640 (E.D.N.Y. 1988) (noting that "where the evidence is conflicting such that reasonable persons might draw differing inferences, then the question of probable cause is ordinarily for the jury to decide"). Probable cause is to be determined based on the "totality of the circumstances," <u>see</u> <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 162 (2d Cir. 2002); <u>Calamia v. City of New York</u>, 879 F.2d 1025, and the fact that charges were dismissed does not mean that probable cause for the arrest did not exist. <u>See</u> <u>Warren v. Byrne</u>, 699 F.2d 95, 98 (2d Cir. 1983). However, where an individual has been arrested for resisting arrest, the courts have held that, as a matter of law, that arrest is not lawful unless defendants can establish that the original arrest which was resisted was either authorized by a warrant or based on probable cause. <u>See, e.g.</u>, <u>Curry v. City of Syracuse</u>, 316 F.3d 324, 336 (2d Cir. 2003); <u>Murphy v. Lynn</u>, 118 F.3d at 948; <u>Weyant v. Okst</u>, 101 F.3d at 855. In this case, plaintiff was arrested and charged with one count of reckless driving, one count of resisting arrest, two counts of aggravated harassment in the second degree, and two counts of menacing in the third degree. (Pl.'s 56.1 Stmnt ¶ 88; Defs.' 56.1 Stmnt ¶ 88).

2. <u>Application</u>

Here, Officers Snelders and Knatz were directed to locate and arrest plaintiff based on the threats that plaintiff made to kill his wife and Nassau County police officers. (Pl.'s 56.1 Stmnt ¶ 41; Defs.' 56.1 Stmnt ¶ 41). This conduct constituted a violation of Penal Law Section 240.30(1), which provides that a person is guilty of aggravated harassment in the second degree when "with intent to harass, annoy, threaten or alarm another person, he . . . 1. [] (a) communicates with a person, anonymously or otherwise, by telephone, . . . in a manner likely to

13

cause annoyance or alarm . . . ." N.Y. Penal Law § 240.30(1) (McKinney 2007). The

information in the possession of the Nassau County Police Department was that on March 11,

2004, Hartman's wife made a 911 call to the County reporting that she believed the plaintiff was

trying to break into her home despite an order of protection that had been issued by the Family

Court. She also reported plaintiff's earlier threats to kill her and her family, some of which were

recorded on her cell phone voicemail and home answering machine. While Nassau County

police officers were in the residence, having responded to plaintiff's wife's 911 call, they spoke

with plaintiff by telephone and he issued a general threat to kill Nassau County police officers.

(Pl.'s 56.1 Stmnt ¶¶ 31-32; Defs.' 56.1 Stmnt ¶¶ 31-32). Not only were Officers Snelders and

Knatz aware of the threats, they were shown a photograph of plaintiff and were told that plaintiff

was violent, possibly out of control, and was considered "extremely dangerous." (Pl.'s 56.1

Stmnt ¶¶ 44-47, 51; Defs.' 56.1 Stmnt ¶¶ 42, 44-47, 51; but see Pl.'s 56.1 Stmnt ¶ 42). Officer

Knatz had been told by Long Beach Police that plaintiff was a drug abuser and "had been crazy

since he was sixteen years old." (Pl.'s 56.1 Stmnt ¶ 46; Defs.' 56.1 Stmnt ¶ 46).

Thus, based on their recognition of plaintiff and the information they had received

regarding the threats made to his wife and to the police officers, defendants contend that there

was clearly probable cause for the arrest.[9] This finding of probable cause was subsequently

---

[9]Despite the intervening time period between plaintiff's threats to his wife and the police and the time of the arrest, defendants did not procure a warrant for plaintiff's arrest. Neither of the parties raised this issue in their papers, but the Court notes that a warrant was unnecessary in a situation such as this, where plaintiff was arrested in a public place. See United States v. Watson, 423 U.S. 411, 418 (1976) (holding that "[t]he cases construing the Fourth Amendment thus reflect the ancient common-law rule that a peace officer was permitted to arrest . . . for a felony not committed in his presence if there was reasonable ground for making the arrest"); United States v. Gori, 230 F.3d 44, 50 (2d Cir. 2000) (holding that "[a]bsent a reasonable expectation of privacy, . . . the warrant requirement is inapplicable and the legitimacy of

confirmed by the grand jury, which subsequently issued an indictment of plaintiff on one count of criminal contempt in the first degree, four counts of aggravated harassment in the second degree, two counts of menacing in the third degree, one count of resisting arrest, one count of reckless endangerment in the second degree, and one count of reckless driving. (Pl.'s 56.1 Stmnt ¶ 89; Defs.' 56.1 Stmnt ¶ 89). A grand jury indictment creates a presumption of probable cause. Rothstein v. Carriere, 373 F.3d 275, 282-83 (2d Cir. 2004); Carson v. Lewis, 35 F. Supp. 2d 250, 257, 260-61 (E.D.N.Y. 1999). That presumption of probable cause is established conclusively by conviction at trial or by guilty plea, and therefore bars Section 1983 claims of false arrest/false imprisonment. Walker v. Youman, No. 02 CV 5957, 2006 U.S. Dist. LEXIS 11472, at *11-13 (E.D.N.Y. Mar. 3, 2006). Pursuant to a plea arrangement offered by the Nassau County District Attorney's Office, plaintiff pled guilty to criminal contempt in the second degree, resisting arrest, and aggravated harassment in the second degree. (Pl.'s 56.1 Stmnt ¶¶ 90-91; Defs.' 56.1 Stmnt ¶¶ 90-91).

Plaintiff does not address this issue in his responsive papers and accordingly, it appears that he does not contest the argument that there was probable cause for the arrest. Under the circumstances, the Court finds that because the officers had probable cause to arrest plaintiff, his claims for false arrest and false imprisonment must be dismissed.

---

challenged police conduct is tested solely by the Fourth Amendment's requirement that any search or seizure be reasonable") (citing Oliver v. United States, 466 U.S. 170, 177 (1984)). Although the probable cause standard is "incapable of precise definition, . . . the substance of all the definitions of probable cause is a reasonable ground for belief of guilt." Maryland v. Pringle, 540 U.S. 366, 371 (2003).

C. Assault and Battery and Excessive Force Claims

Defendants have also moved for summary judgment on plaintiff's state law assault and battery claims and plaintiff's claim based on the alleged use of excessive force. Defendants support their motion on the grounds that there was probable cause to arrest plaintiff on the assault and battery charges, and on the grounds that Officer Snelders' use of force under these circumstances was objectively reasonable as to the assault and battery claims as well as the excessive force claim.

1. Standards

Assault and battery claims under New York law are analogous to excessive force claims under the Fourth Amendment. Cosby v. City of White Plains, No. 04 CV 5829, 2007 WL 853203, at *6 (S.D.N.Y. Feb. 9, 2007). Indeed, assault and battery claims under New York law and excessive force claims under the Fourth Amendment are evaluated pursuant to the same standards. Id. (citing Posr v. Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991)). Under New York law, an "assault" is "an intentional placing of another person in fear of imminent harmful or offensive conduct." Cunningham v. United States, 472 F. Supp. 2d 366, 380 (E.D.N.Y. 2007) (citing Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001)). A battery is "an intentional wrongful physical contact with another person without consent." Id. (citing Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 363 (2d Cir. 2004)). A plaintiff alleging excessive force must demonstrate that "the amount of force used was objectively unreasonable" when considered from "the perspective of the officer at the time of the arrest." Cosby v. City of White Plains, 2007 WL 853203, at *6.

Under the Supreme Court's decision in Graham v. Connor, 490 U.S. 386 (1989), a claim of excessive use of force stemming from an illegal arrest invokes the protections of the Fourth Amendment, which "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Id. at 394. Using this reasonableness standard, the court must balance the "nature and quality" of the intrusion into the plaintiff's Fourth Amendment interests against the "countervailing governmental interests at stake." Id. at 396 (quotation marks and citations omitted). The court must pay careful attention to the facts and circumstances of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)); see also Bowles v. State of New York, 37 F. Supp. 2d 608, 612 (S.D.N.Y. 1999) (noting that "'[w]here an excessive force claim arises in the context of an arrest, the claim should be evaluated on a reasonableness standard'") (quoting Houston v. New York State Troopers, No. 96 CV 1587, 1997 WL 639256, at *3 (S.D.N.Y. Oct. 15, 1997)).

The reasonableness of the force used is based on the perspective of a reasonable officer on the scene. See Graham v. Connor, 490 U.S. at 396; see also Zirlin v. Vill. of Scarsdale, 365 F. Supp. 2d 477, 486 (S.D.N.Y. 2005). Graham does not set a per se minimum amount of injury or force below which a plaintiff may not recover. See id. Rather, Graham requires the finder of fact to consider all of the circumstances in determining whether the force used was reasonable. See id. The Supreme Court has cautioned, however, that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Graham v. Connor, 490 U.S. at 396 (citation omitted) (quoting Johnson v. Glick,

481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973)); see Lennon v. Miller, 66
F.3d 416, 425 (2d Cir. 1995).

2. Analysis

As an initial matter, defendants contend in part that because there was probable cause for
the arrest, plaintiff's assault and battery claims must fail. (Defs.' Mem.[10] at 23). However, the
existence of probable cause does not preclude claims for assault and battery. Cunningham v.
United States, 472 F. Supp. 2d at 382. Indeed, "[i]f the force used against plaintiff was more
than necessary under all the circumstances, then plaintiff is entitled to recover." Id. (citing Pastre
v. Weber, 717 F. Supp. 992, 994-95 (S.D.N.Y. 1989) (holding that a state trooper used excessive
force under Section 1983 in making a lawful arrest after a high-speed chase, where the trooper
"vented his anger" by striking arrestee on head, arms, and ribs, and by kicking arrestee in groin
while he was lying on his stomach); Jones v. State, 33 N.Y.2d 275, 352 N.Y.S.2d 169, 307
N.E.2d 236 (1973) (finding that the use of excessive force by troopers during the retaking of a
prison after the Attica riot was sufficient to impose liability upon the State); Hinton v. City of
New York, 13 A.D.2d 475, 212 N.Y.S.2d 97 (1st Dep't 1961) (affirming an award of damages
where plaintiff, while being lawfully arrested, was struck by several police officers).

Defendants contend that the officers' use of force was objectively reasonable in light of
what the officers knew at the time. (Defs.' Mem. at 17). Specifically, defendants contend that
"[t]he crime at issue was severe" because the officers knew that the plaintiff had threatened to
kill his wife and police officers generally. (Id.) He had attempted to evade the police in his

---

[10]Citations to "Defs.' Mem." refer to the Memorandum of Law in Support of the County
Defendants' Motion for Summary Judgment.

vehicle and then acted "unpredictably" and "erratically" in a residential area. (Id.) Not only did plaintiff actively attempt to evade arrest, posing a danger to the public through the car chase in a residential neighborhood, but the officers were aware of plaintiff's background and prior use of weapons. (Id. at 18). Finally, defendants contend that Officer Snelders struck the plaintiff with the police vehicle because "he reasonably believed that Hartman possessed a weapon and that Hartman's use of deadly force against Snelders . . . was imminent." (Id.) Citing the recent Supreme Court decision in Scott v. Harris, 127 S. Ct. 1769 (2007) (finding a police officer's use of his vehicle to stop a high speed chase by striking the bumper of the other vehicle, causing it to overturn and rendering plaintiff quadriplegic, was reasonable), defendants contend that Officer Snelders' actions in striking the plaintiff with the police vehicle, regardless of whether plaintiff was actually in possession of a weapon, were reasonable. (Id.) See also Smith v. Freland, 954 F.2d 343 (6th Cir. 1992) (justifying the shooting of an unarmed individual after the individual led police on a wild car chase and crashed into a fence, and finding that a car may be a deadly weapon); Reese v. Anderson, 926 F.2d 494 (5th Cir. 1991) (justifying shooting of unarmed robbery suspect who led police on a car chase and who, after finally stopping, reached below the officer's line of sight, leading the officer to reasonably believe that he was reaching for a gun).

Plaintiff contends that the facts are in dispute as to what the plaintiff did and whether the officers were justified in believing that they were in imminent danger at the time. Plaintiff argues that defendants rely solely on their own version of the facts and ignore the evidence to the contrary, which plaintiff claims is in dispute. For instance, Hartman denies that he ever had a weapon, that he ever stuck his hands down his pants, or that he made any threatening gestures toward the officers. He also contends that rather than approaching the police vehicle, he ran

19

away from the vehicle, thereby raising a question as to whether the officers' belief that he posed a threat was a reasonable one. He points to the fact that he was actually struck on the sidewalk rather than in the middle of the road, which is where Officer Snelders originally swore he saw the plaintiff's threatening gesture. Also, an eyewitness, Jamie Florio, testified that plaintiff was struck on his legs by the police car while he was on the lawn and not in the street – that the police car drove up onto the curb before striking plaintiff. (See Pl.'s Mem. at 8 (citing Florio Dep.[11] at 24, 41); see also Florio Dep. at 34). She also stated that she heard no threats or yelling, never saw plaintiff reaching into his pants, and instead says she observed the plaintiff waving his arms in the air. (See id.; Florio Dep. at 22).

Plaintiff further argues that the jury should be entitled to consider the fact that neither Snelders nor Knatz radioed for assistance to indicate that they thought Hartman was a danger during the five-minute car chase that occurred. Instead, the officers simply described the pursuit, raising questions as to the reasonableness of the officers' representation that they feared the threat of imminent danger.

In addition, plaintiff points to the physical evidence, including photographs of the crime scene, and the reconstruction of the incident by the expert witnesses for both sides. This evidence shows that there was blood on the sidewalk as opposed to on the roadway, which, when considered with the testimony of defendants' own expert that the impact of the vehicle only pushed plaintiff forward .6 feet or the equivalent of seven inches, raises additional questions as to the veracity of Officer Snelders' claim that he struck plaintiff in the roadway to "'terminate his

---

[11]Citations to "Florio Dep." refer to the deposition of Jamie Florio taken September 1, 2005, and appended as Exhibit E to Defendant's motion for summary judgment.

approach.'" (Pl.'s Opp.[12] at 21). Plaintiff contends that there is sufficient evidence to support his version of the events – namely, that Snelders never felt threatened, that plaintiff was running away from the scene on foot, was only wanted for verbal threats that carried a potential misdemeanor charge, and that Snelders deliberately accelerated toward plaintiff, striking him on the sidewalk after crossing the grassy median. (Id. at 21-22). Plaintiff contends that even the telephone threat made the day before did not "give Snelders license to use deadly physical force." (Id. at 22).

Having examined the totality of the circumstances, there appears to be a question of fact as to whether the officers' use of force was reasonable under the circumstances and whether the amount of force used was reasonable in light of plaintiff's actions at the time. Accordingly, as assault and battery claims under New York law and excessive force claims under the Fourth Amendment are evaluated pursuant to the same standard, defendants' motion for summary judgment on the assault and battery and excessive force claims is denied.

## D. Qualified Immunity

Defendants move for summary judgment on the grounds that police officers are entitled to qualified immunity from all of plaintiff's Section 1983 claims.

### 1. Standards

It is well-established that police officers are afforded the defense of qualified immunity from suits for damages resulting from an incident arising from their official conduct. Anderson

---

[12]Citations to "Pl.'s Opp." refer to Plaintiff Thomas Hartman's Memorandum of Law in Opposition to Motion to Dismiss Complaint, filed December 5, 2007.

v. Creighton, 483 U.S. 635, 638-41 (1987); Lennon v. Miller, 66 F.3d at 420. The qualified

immunity defense reflects an attempt by the courts to balance the competing interests of "a

damages remedy to protect the rights of citizens" with "'the need to protect officials who are

required to exercise discretion and the related public interest in encouraging the vigorous

exercise of official authority.'" Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982) (quoting Butz v.

Economou, 438 U.S. 478, 504-05, 506 (1978)). Redefining the limits of qualified immunity in

essentially objective terms, the Court in Harlow v. Fitzgerald held that qualified immunity

shields government actors from liability for damages when they are sued in their personal

capacity, "insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." 457 U.S. at 818. See also Ford v.

McGinnis, 352 F.3d 582, 596 (2d Cir. 2003). Accordingly, if the law was clearly established,

then an immunity defense will generally fail, "since a reasonably competent public official

should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. at 818-19. If the

official "can prove that he neither knew nor should have known of the relevant legal standard,"

however, then the defense should succeed. Id.

Thus, to establish a qualified immunity defense, an officer must show "either that his

conduct did not violate 'clearly established rights' of which a reasonable person would have

known, or that it was 'objectively reasonable' to believe that his acts did not violate these clearly

established rights." Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir. 1990) (citing Warren v.

Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, 498 U.S. 967 (1990), and Calamia v. City of New

York, 879 F.2d at 1035). In conducting this inquiry, courts should examine the unique facts and

circumstances of each case to determine whether "[t]he contours of the right . . . [are] sufficiently

clear that a reasonable official would understand that what he is doing violates that right . . . ." Id. (quoting Anderson v. Creighton, 483 U.S. at 640). "Three factors are pertinent in determining whether a legal rule was 'clearly established' at the time of the challenged action: (1) whether the right in question was defined with 'reasonable specificity;' (2) whether the decisional law of the Supreme Court and the Second Circuit supports the existence of the right in question; and (3) whether, under pre-existing law, a reasonable defendant official would have understood that his or her acts were unlawful." Warren v. Keane, 937 F. Supp. 301, 306 (S.D.N.Y. 1996) (citing Soares v. State of Connecticut, 8 F.3d 917, 922 (2d Cir. 1993)), aff'd, 196 F.3d 330 (2d Cir. 1999); see also Rodriguez v. Phillips, 66 F.3d 470, 476 (2d Cir. 1995).

The Supreme Court in Saucier v. Katz explicitly held that qualified immunity is a defense in an excessive force case arising under the Fourth Amendment. 533 U.S. 194, 206 (2001). Thus, "although an officer's conduct may be 'objectively unreasonable' under the Fourth Amendment analysis of Graham, he or she may nonetheless be entitled to a cloak of qualified immunity against personal liability under the Harlow standard." Merzon v. County of Suffolk, 767 F. Supp. 432, 447 (E.D.N.Y. 1991); see also Posr v. Doherty, 944 F.2d at 95 (considering qualified immunity defense in a Section 1983 excessive force case); Lloyde v. Lord, No. 94 CV 484, 1997 WL 123996, at *2-3 (S.D.N.Y. Mar. 19, 1997) (considering qualified immunity defense in an Eighth Amendment excessive force case). "Mere allegations that one was subjected to excessive force do not preclude a finding that qualified immunity is available as a matter of law," Ferreira v. Westchester County, 917 F. Supp. 209, 219 (S.D.N.Y. 1996), because "to say that the use of constitutionally excessive force violates a clearly established right . . . begs the open question whether the particular degree of force under the particular circumstances was

23

excessive." Finnegan v. Fountain, 915 F.2d at 823.[13]

Since the right of an individual to be free from subjection to excessive force is well-established, see Calamia v. City of New York, 879 F.2d at 1036, the question then becomes whether the officers' conduct here violated "'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that [their] acts did not violate these clearly established rights." Finnegan v. Fountain, 915 F.2d at 823 (citations omitted). However, in order for the court to determine whether the conduct of these officers was "objectively reasonable," the court must first determine what the circumstances were and what actions the officers took in response. The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the plaintiff] is actively resisting arrest or attempting to evade arrest by flight." Soares v. Connecticut, 8 F.3d at 921 (quoting Graham v. Connor, 490 U.S. at 396). In seeking to support a claim for qualified immunity, the defendants must establish by a preponderance of the evidence that "'they did not know and reasonably should not have known that their actions would constitute a violation of plaintiffs [sic] constitutional rights.'" Garcia v. Senkowski, 919 F. Supp. 609, 616 (N.D.N.Y. 1996) (quoting Redcross v. County of Rennselaer, 511 F. Supp. 364,

---

[13]The defense of qualified immunity is also applicable to claims of false arrest, Lennon v. Miller, 66 F.3d at 423; Golino v. City of New Haven, 950 F.2d at 870, even in the absence of probable cause, so long as the officer can show either that it was objectively reasonable for him to believe that probable cause existed or that reasonably competent officers could disagree on the existence of probable cause. See Golino v. City of New Haven, 950 F.2d at 870; Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987). Here, because the Court has already granted summary judgment in favor of defendants on the false arrest and false imprisonment claims, there is no need to address qualified immunity as to those claims.

372 (N.D.N.Y. 1981)). Thus, while a determination of whether defendants may claim qualified immunity is a legal issue that the court may decide on a motion for summary judgment, this determination is still subject to the rules governing motions for summary judgment. See Lloyde v. Lord, 1997 WL 123996, at *3.

### 2. Analysis

Here, the defendants have asserted their claim of qualified immunity as to all of plaintiff's Section 1983 claims. They argue that it was objectively reasonable for the officers to use deadly force in light of plaintiff's actions. Defendants cite the fact that Officer Knatz, Officer Snelders, and an eyewitness, Jamie Florio, have all described plaintiff's actions in reaching into his pants and threatening to shoot the officers with what the officers believed was a gun. (Defs.' Opp. at 6). They argue that it was objectively reasonable for Officer Snelders to believe that his use of the vehicle to stop the threat of imminent danger posed by plaintiff did not violate an established constitutional right. (Id.) Thus, under these circumstances, defendants argue that they are entitled to dismissal of plaintiff's claims on qualified immunity grounds. (Id.)

Plaintiff, however, notes that there is a serious question of fact in dispute as to whether plaintiff was, as he asserts, unarmed and running away from the officers at the time of the incident, and whether the officers were ever in imminent physical danger. (Pl.'s Mem. at 18-21; Pl.'s Reply[14] at 5-6). Plaintiff asserts that, contrary to defendants' arguments, the non-party witness, Jamie Florio, testified that he never heard threats from the plaintiff, never saw plaintiff place his hand in his waistband, and instead testified that the parties were "running around" and

---

[14]Citations to "Pl.'s Reply" refer to Plaintiff Thomas Hartman's Reply Memorandum of Law in Further Support of Motion to Amend Complaint, dated January 18, 2007.

that the officer struck plaintiff while he was on the lawn by the sidewalk. (Pl.'s Mem. at 19-20; Pl.'s Reply at 6). Certainly, "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force." Tennessee v. Garner, 471 U.S. 1, 11 (1985). It is clear that a car may be used as a deadly weapon. Brosseau v. Haugen, 543 U.S. 194, 200 (2004) (citing Smith v. Freland, 954 F.2d at 347); see also United States v. Sanchez, 914 F.2d 1355 (9th Cir. 1990), cert. denied, 499 U.S. 978 (1991).

While the availability of qualified immunity as a defense to an excessive force claim is a question of law to be determined by the court, when the facts are unclear and in dispute, it is impossible for the court to decide whether defendants' affirmative defense of qualified immunity should be a legal bar to an excessive force claim. See Calamia v. City of New York, 879 F.2d at 1036 (stating that the question of qualified immunity "was a matter as to which the facts were not undisputed, and hence it was a question to be answered by a properly instructed jury"); Finnegan v. Fountain, 915 F.2d at 821 (noting that "[o]nce disputed factual issues are resolved, the application of qualified immunity is, however, ultimately a question of law for the court to decide"); Lennon v. Miller, 66 F.3d at 421 (same). Thus, even though the question of immunity is ordinarily one for the court to decide, "that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, 513 U.S. 1076 (1995). As the court in Lennon v. Miller noted:

> [A] defendant is entitled to summary judgment on
> qualified immunity grounds when "no reasonable
> jury, looking at the evidence in the light most

> favorable to, and drawing all inferences most
> favorable to, the plaintiffs, could conclude that it
> was objectively unreasonable for the defendant[]" to
> believe that he was acting in a fashion that did not
> clearly violate an established federally protected
> right.

66 F.3d at 420 (quoting Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987)).

In Oliveira v. Mayer, the court found that summary judgment was inappropriate where there were "conflicting accounts of the total duration of the detention, the plaintiffs' responsiveness to the police's instructions, the physical treatment of the plaintiffs once removed from their vehicle, the defendants' use of their weapons, and a number of other particulars." 23 F.3d 642, 650 (2d Cir. 1994); see also Greenfield v. City of New York, No. 99 CV 2330, 2000 WL 124992, at *6-7 (S.D.N.Y. Feb. 3, 2000) (holding that where there was a factual dispute as to probable cause regarding whether plaintiff was playing his music too loudly, and a dispute as to the amount of force used, it was not appropriate to grant summary judgment on a qualified immunity defense).

Here, viewing all of the evidence in a light most favorable to the plaintiff, the party opposing the motion for summary judgment, a jury could find that it was not objectively reasonable for defendants to believe that, in using the amount of force they did, they were acting in a fashion that did not violate plaintiff's constitutional rights. Thus, with respect to the claim of excessive force, this Court finds that there are sufficient material issues of fact in dispute with regard to the reasonableness of the force used which preclude entry of summary judgment at this time. On the facts currently before this Court, therefore, defendants' motion for summary judgment on the qualified immunity defense, insofar as it relates to the excessive force claim, is

denied.

### E. Plaintiff's Negligence Claim

Defendants move for summary judgment seeking dismissal of plaintiff's negligence claim on the grounds that a claim of negligence will not lie when the actor's conduct is intentional. (See Defs.' Mem. at 24 (citing Bayles v. Manns, No. 05 CV 2325, 2006 WL 249560, at *1 (2d Cir. Feb. 2, 2006) (holding that "no reasonable jury could conclude that Stephen Martucci's conduct while driving the Volkswagen Beetle on the night in question – which, in fact, has already resulted in his conviction [of] . . . a crime that includes an intent requirement – was anything other than intentional . . . [t]hat Martucci did not seek to harm Bayles with his conduct, and that she was merely an inadvertent victim of the chain of events that he set in motion, does not render Martucci's conduct negligent rather than intentional"))). Defendants contend that, because Officer Snelders conceded that he intentionally struck plaintiff with the police vehicle because he believed that plaintiff was about to use deadly force, there can be no claim of negligence as a matter of law.

Plaintiff contends, however, that whether the officer exercised that degree of reasonable care "in employing deadly physical force" which would be required of a police officer under similar circumstances is a question of fact to be decided by the jury. (Pl.'s Mem. at 23 (citing McCummings v. New York City Transit Auth., 81 N.Y.2d 923, 925, 613 N.E.2d 559, 560, 597 N.Y.S.2d 653, 654 (1993))). Plaintiff further argues that the cases cited by defendants are distinguishable on the grounds that the issue of the reasonableness of the use of deadly force was never raised in those cases. (Id. (citing Sylvester v. City of New York, 385 F. Supp. 2d 431

(S.D.N.Y. 2005); Oliver v. Cuttler, 968 F. Supp. 83 (E.D.N.Y. 1997); Brown v. Johnson, No. 04 CV 6074, 2007 WL 1034830, *1 (W.D.N.Y. Apr. 4, 2007))). Plaintiff notes that the Second Circuit has recently suggested the viability of a common law claim of negligence in a case involving the employment of deadly physical force by the police in an effort to apprehend the plaintiff. See Carrasquillo v. City of Troy, 251 Fed. Appx. 688, 689 (2d Cir. 2007) (holding that "[plaintiff] might have endeavored to assemble a record evidencing the elements of a claim under 'common-law negligence – i.e., that [the officer], in employing deadly physical force in an effort to apprehend plaintiff, did not exercise that degree of care which would reasonably be required of a police officer under similar circumstances") (quoting McCummings v. New York City Transit Auth., 81 N.Y.2d at 925, 613 N.E.2d at 560, 597 N.Y.S.2d at 654). However, the Second Circuit did not speak to the issue of whether a negligence claim may be brought in conjunction with an assault or excessive force claim, because McCummings "[was] a negligence case," 81 N.Y.2d at 927, 613 N.E.2d at 562, 597 N.Y.S.2d at 656, and the Second Circuit was simply reviewing the district court's decision "to deem [such a negligence] theory abandoned and to dismiss it pursuant to Rule 50." Carrasquillo v. City of Troy, 251 Fed. Appx. at 689.

The caselaw in this circuit is clear that a negligence claim will not stand where a plaintiff asserts an excessive force claim premised upon a defendant's allegedly intentional conduct. Busch v. City of New York, No. 00 CV 5211, 2003 WL 2217896, at *7 (E.D.N.Y. Sept. 11, 2003) (quoting Dineen v. Stramka, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002)). See also Sylvester v. City of New York, 385 F. Supp. 2d at 439 (holding that "[w]hile it is possible to have a negligent shooting claim against a police officer, the summary judgment record in the case establishes that the shooting was intentional and not negligent. In view of that intentional

29

conduct, no reasonable juror could find that the conduct was negligent, and therefore, a claim for a negligent shooting cannot be sustained in this case") (citations omitted); Brown v. Johnson, 2007 WL 1034830, at *10 (collecting cases). "New York has adopted the view that, 'once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently.'" Oliver v. Cuttler, 968 F. Supp. at 92 (quoting Mazzaferro v. Albany Motel Enters., Inc., 127 A.D.2d 374, 376, 515 N.Y.S.2d 631, 632-33 (3d Dep't 1987)). Therefore, since plaintiff has brought a claim of excessive use of force under the Fourth Amendment, which is analogous to an assault claim under New York law, see Cosby v. City of White Plains, 2007 WL 853203, at *6, and defendants have conceded that Officer Snelders' use of deadly force in attempting to apprehend plaintiff was intentional, plaintiff's negligence claim cannot be sustained in this case.

Accordingly, on the facts currently before this Court, defendants' motion for summary judgment on plaintiff's negligence claim is granted.

F.  Claims Against the Officers in their Official Capacity

Defendants contend that because the plaintiff has named the County as a defendant, the claims brought against Officers Snelders and Knatz in their official capacities must be dismissed as duplicative. (Defs.' Mem. at 9).

A suit against an individual municipal official in his "official" or "professional" capacity is functionally equivalent to a claim brought against the governmental entity itself. Petruso v. Schlaefer, 474 F. Supp. 2d 430, 441 (E.D.N.Y. 2007) (citing Orange v. County of Suffolk, 830 F. Supp. 701, 706-07 (E.D.N.Y. 1993) (noting that "any damage award may be satisfied by looking

only to the entity itself, not the official")). See also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Kentucky v. Graham, 473 U.S. 159, 166 (1985). On this basis, the court in Petruso dismissed the official capacity claims against the individuals named in the suit, on the grounds that "it is redundant to allow the lawsuit to continue against individuals in their official capacities." Id. (citing Orange v. County of Suffolk, 830 F. Supp. at 707).

Plaintiff does not respond to this argument in his papers. However, in plaintiff's letter of September 10, 2007, plaintiff withdrew all claims against the County. Therefore, as the claims against the County have been withdrawn, the claims against the individual officers in their official capacities are no longer duplicative. Accordingly, the Court denies defendants' motion to dismiss the claims against the officers insofar as they are sued in their official capacities. Furthermore, to the extent that the Complaint contains claims against them in their individual capacities, those claims will be permitted to proceed.[15]

## G. Plaintiff's Negligent Hiring, Retention, Training, and Supervision Claim

Defendants contend that plaintiff's negligent hiring, retention, training, and supervision claim against the County defendants must be dismissed as a matter of law because such a claim may only proceed against an employer where an employee can be shown to be acting outside the scope of his or her employment. (Defs.' Mem. at 25 (citing Hill v. City of New York, No. 03 CV 1283, 2005 WL 3591719, at *11 (E.D.N.Y. Dec. 30, 2005); Griffin v. City of New York, 287 F. Supp. 2d 392, 397-98 (S.D.N.Y. 2003); Santoro v. Town of Smithtown, 40 A.D.3d 736, 738, 835

---

[15]The Court notes that plaintiff has moved to amend the complaint to clarify that the claims against Officer Snelders are brought in his individual capacity. That motion is dealt with infra at 34-40.

31

N.Y.S.2d 658, 660 (2d Dep't 2007); <u>Ashley v. City of New York</u>, 7 A.D.3d 742, 743, 779

N.Y.S.2d 502, 503 (2d Dep't 2004))). Defendants concede in their Answer and plaintiff states in

his Amended Complaint that the officers were acting within the scope of their employment.

Plaintiff does not respond to this argument in his papers. Indeed, by letter dated

September 10, 2007, plaintiff withdrew his <u>Monell</u> claims and the rest of the claims against all

defendants except for Officers Snelders and Knatz. Accordingly, the Court denies as moot

defendants' motion to dismiss plaintiff's negligent hiring, retention, training, and supervision

claim against the County defendants.


H.  Supplemental Jurisdiction

Defendants contend that if the Court grants summary judgment in favor of defendants on

the Section 1983 claims, the Court should also decline to consider plaintiff's state law claims of

assault and battery, negligence, and negligent hiring, training, retention, and supervision, because

there would be no independent basis for federal jurisdiction. As an initial matter, plaintiff

withdrew his claims of negligent hiring, training, retention, and supervision in his letter of

September 10, 2007, as discussed <u>supra</u> at pages 31 and 32. Accordingly, the Court will limit its

review of supplemental jurisdiction to plaintiff's state law claims of assault and battery and

negligence.

A federal court's exercise of supplemental jurisdiction over a plaintiff's state law claims,

while not automatic, "is a favored and normal course of action." <u>Promisel v. First Am. Artificial

Flowers</u>, 943 F.2d 251, 254 (2d Cir. 1991). "If, considered without regard to their federal or state

character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one

judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." Id. (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). Indeed, federal courts are empowered to exercise pendent jurisdiction over plaintiffs' state claims if they derive from "a common nucleus of operative fact." Achtman v. Kirby, Mcinerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (citing Promisel v. First Am. Artificial Flowers, 943 F.2d at 254; United Mine Workers v. Gibbs, 383 U.S. at 725). Whether claims derive from a "common nucleus of operative fact," depends on whether "the facts underlying the federal and state claims substantially overlap." Id.

Courts should exercise supplemental jurisdiction where "considerations of judicial economy, convenience and fairness to litigants" support hearing the claims at the same time. Id. (citing United Mine Workers v. Gibbs, 383 U.S. at 726). Indeed, where a plaintiff is making a federal claim against one defendant, federal courts often assert supplemental jurisdiction over state claims asserted against different defendants. Smith v. City of New York, 950 F. Supp. 55, 59 (E.D.N.Y. 1996) (citing Baylis v. Marriott Corp., 843 F.2d 658, 664 (2d Cir. 1988)). However, where all of the federal claims are dismissed before trial, the court may decline to exercise jurisdiction over the remaining state law claims. Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998) (citing 28 U.S.C. § 1367(c)(3)).

In this case, the state and federal claims are intertwined in that all of the claims against the defendants, including those brought under state law, arise out of the same incident and set of circumstances. Therefore, since the Court has not dismissed all of the federal claims, the Court may properly exercise supplemental jurisdiction over the state claims.

Accordingly, defendants' motion seeking dismissal of plaintiff's state law claims is

denied.

MOTION TO AMEND

Plaintiff moves to amend the Complaint to assert claims for money damages against Officer Snelders in his individual capacity. Defendants oppose the motion as futile because Officer Snelders is entitled to a defense of qualified immunity based on the face of the Proposed Complaint. (See Defs.' Mem. at 5). In addition, defendants argue that plaintiff's motion should be denied on grounds of undue delay, bad faith, and prejudice to the defendant. (See id. at 7-9).

A. Standards

Federal Rule of Civil Procedure 15(a) provides that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has said that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Indeed, the courts have interpreted Rule 15(a) liberally, allowing plaintiffs to add new or alternative causes of action as well as to add or substitute defendants. Grace v. Rosenstock, 169 F.R.D. 473, 479 (E.D.N.Y. 1996). However, it is within the district court's discretion whether to grant or deny leave to amend. Blakely v. Wells, 209 Fed. Appx. 18, 20 (2d Cir. 2006) (citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)). A district court may deny leave for "good reason," such as futility, bad faith, undue delay, or undue prejudice to the opposing party, but "outright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." McCarthy v. Dun & Bradstreet Corp.,

34

482 F.3d 184, 200-01 (2d Cir. 2007).  An amendment to a complaint would be futile if it could

not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Therefore, in examining the proposed futility of an amendment, the inquiry is comparable

to that required on a motion to dismiss pursuant to Rule 12(b)(6).  Narvarte v. Chase Manhattan

Bank, N.A., No. 96 CV 8133, 1998 WL 690059, at *1 (S.D.N.Y. Oct. 2, 1998).  The Court must

construe the facts alleged by the party proposing the amendment to be true and view them in the

most favorable light, id. (citing Middle Atl. Utils. Co. v. S.M.W. Dev. Corp., 392 F.2d 380,

386-87 (2d Cir. 1968)), and the Court should not dismiss the complaint as long as it satisfies the

"plausibility" standard announced in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65,

1974 (2007) (requiring "only enough facts to state a claim to relief that is plausible on its face");

see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (interpreting Twombly as requiring

a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual

allegations in those contexts where such amplification is needed to render the claim plausible"

(emphasis in original)).

## B. Analysis

### 1. Futility

Defendants contend that plaintiff's proposed amendment is futile because a claim against

Officer Snelders in his individual capacity is barred by the doctrine of qualified immunity.

As an initial matter, plaintiff's claim against Officer Snelders in his individual capacity is

based on his alleged use of excessive force.  As discussed supra at 16-21, defendants contend that

because Officer Snelders' actions in striking plaintiff were reasonable and in accordance with well-established law in light of the officer's need to terminate plaintiff's "imminent use of deadly physical force" (Defs.' Mem. At 6 (citing N.Y. Penal Law §§ 35.15, 35.30 (McKinney 2006))), the plaintiff's motion to add a claim against Officer Snelders in his individual capacity should be denied as futile because the officer is entitled to qualified immunity.

In response to defendants' arguments, plaintiff notes correctly that at this stage of the pleadings, the facts must be construed in favor of plaintiff, see Narvarte v. Chase Manhattan Bank, N.A., 1998 WL 690059, at *1 (citing Middle Atl. Utils. Co. v. S.M.W. Dev. Corp., 392 F.2d at 386-87); Cowan v. Breen, 352 F.3d at 756 (2d Cir. 2003) (rejecting the argument that the analysis should be limited to defendants' version of events), and that there is a serious question of fact in dispute as to whether plaintiff was, as he asserts, unarmed and running away from the officers at the time of the incident, and whether the officers were ever in imminent physical danger. (Pl.'s Mem. at 12-13; Pl.'s Reply[16] at 6). While the Court may consider a defense of qualified immunity in the context of a motion for summary judgment, the Second Circuit has held that assertion of a defense of qualified immunity is "not a valid basis for denying leave to amend the complaint" because "such immunity is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." Oliver Schools, Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991). Moreover, while a determination of whether defendants may claim qualified immunity is a legal issue that the court may decide on a motion for summary judgment, this determination is still subject to the rules

_____

[16]Citations to "Pl.'s Reply" refer to Plaintiff Thomas Hartman's Reply Memorandum of Law in Further Support of Motion to Amend Complaint, dated January 18, 2007.

governing motions for summary judgment. See Lloyde v. Lord, 1997 WL 123996, at *3. In seeking to support a claim for qualified immunity, the defendants must establish by a preponderance of the evidence that "'they did not know and reasonably should not have known that their actions would constitute a violation of plaintiff's constitutional rights.'" Garcia v. Senkowski, 919 F. Supp. at 616 (quoting Redcross v. County of Rennselaer, 511 F. Supp. at 372).

Here, in considering defendants' assertion of a qualified immunity defense relative to the claims already alleged in the Complaint, the Court has determined that there are issues of fact in dispute that preclude the Court from finding that defendants' actions justify dismissal of plaintiff's claims on grounds of qualified immunity. When the facts are unclear and in dispute, it is impossible for the court to decide whether defendants' affirmative defense of qualified immunity should be a legal bar to an excessive force claim. See Calamia v. City of New York, 879 F.2d at 1036; Finnegan v. Fountain, 915 F.2d at 821; Lennon v. Miller, 66 F.3d at 421.

Here, in the context of a motion to amend, the plaintiff has presented sufficient facts to raise an issue as to whether the officer's actions were in fact reasonable. Thus, the Court finds that the claim at this point is not futile.

2. Bad Faith and Undue Delay

Defendants argue that the motion to amend should be denied due to the bad faith and undue delay exhibited by plaintiff in waiting to raise these claims nearly three years after the commencement of the action, particularly when the plaintiff was aware of the state law claims at the time the Amended Complaint was filed. (Defs.' Opp. at 7). Defendants note that there has been no further discovery that has come to light in the interim that would justify the delay and

indeed, the factual basis for the proposed claims against Officer Snelders in his individual capacity were known at the time the original pleadings were filed. (Id.)

It is clear that plaintiff bears the burden of explaining a delay in seeking to amend the complaint. See Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983). On the other hand, delay alone, without a showing of bad faith or prejudice, is not sufficient grounds for a court to deny leave to amend. Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) (quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)). While any delay in asserting claims will result in some prejudice to the opposing party, the Second Circuit has found that the length of the delay must be balanced against the resulting prejudice: "'the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" Id. (quoting Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983)); see also Johnson v. Methodist Med. Ctr. of Ill., 10 F.3d 1300, 1303-04 (7th Cir. 1993) (affirming denial of leave to amend where plaintiff's attorney was aware of specific allegations but did not feel it necessary to include them in the pleadings until after the motion for summary judgment was filed), cert. denied, 511 U.S. 1107 (1994); Ansam Assocs., Inc. v. Cola Petroleum Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of leave to amend where new counsel was substituted and discovered new information that resulted in allegations of new omissions and new facts and where a motion for summary judgment had already been filed).

Here, plaintiff contends that there was no undue delay in seeking to amend. Instead, counsel contends that once he received the expert reports and analysis from the expert witnesses concerning the mechanism of the accident and the fact that the plaintiff was struck from behind, corroborating plaintiff's story, counsel notified the Court that he intended to seek permission to

amend. He contends that this expert analysis was necessary to ensure that the amendment had some factual basis and would not be found futile as asserted by defendants. (Pl.'s Mem. at 11-12). According to plaintiff's counsel, the issue of the amendment was raised with the Court at a conference on September 12, 2006, after which the plaintiff sent the proposed Amended Complaint to defendants for review. Although defendants' counsel was directed to notify the Court by September 22, 2006 if a motion was required, plaintiff contends that he heard nothing from defendants' counsel. Therefore, in November 2006, plaintiff's counsel arranged a briefing schedule and sent a letter requesting permission to proceed. (Pl.'s Reply at 2-4).

Although there was arguably some delay in plaintiff's motion to amend the Complaint, the critical question was whether the plaintiff has either acted in bad faith or whether the defendants will suffer significant prejudice as a result of the delay. In this case, there is no evidence that the plaintiff acted in bad faith or deliberately delayed in attempting to amend. While defendants may argue that he should have filed this claim against Officer Snelders at an earlier time, the Court credits plaintiff's counsel's explanation that, in the exercise of caution, he was waiting to see whether his client's version of events could be corroborated by other objective evidence. Thus, the Court concludes that there was no bad faith on the part of the plaintiff.

### 3. Prejudice

The final issue to consider is the potential prejudice to defendants if plaintiff is allowed to amend at this late date. Defendants contend that, contrary to plaintiff's representation that the individual officer was aware of the claims, the allegations in the Amended Complaint refer to the defendants "not as individuals" but pursue claims against them based on actions taken in the scope of their employment. The prejudice to be suffered at this time is that defendant Snelders

is, under the Second Amended Complaint, potentially subject to punitive damages and, even though no further discovery is necessary, the defendants must now defend against a new theory of recovery.

Increased exposure of a defendant through the addition of a punitive damages claim is not sufficient grounds to deny leave to amend. See Finlay v. Simonovich, No. 97 CV 1455, 1997 WL 746460, at *3 (S.D.N.Y. Dec. 2, 1997) (collecting cases and holding that the prejudice from increased exposure due to the addition of a punitive damages claim is "not the type of 'prejudice' to which the Supreme Court referred in [Foman v. Davis, 371 U.S. 178 (1962)] as a basis for denying leave to amend"). See also Wrap-N-Pack, Inc. v. Kaye, 528 F. Supp. 2d 119, 126-27 (E.D.N.Y. 2007) (granting a motion to amend the complaint to add punitive damages claim); Narvarte v. Chase Manhattan Bank, N.A., 1998 WL 690059, at *2 (granting a motion to amend the complaint where "[t]he proposed amended complaint . . . simply add[ed] new legal theories of recovery"). While prejudice, in the form of increased costs in order to defend the additional claim or unwarranted hardship, is considered grounds for denying leave to amend, defendants have not delineated the nature of such prejudice here. Indeed, they concede that there is no need for further discovery and there is no claim that the amendment will cause further delay in the resolution of the case.

In the absence of any other basis for asserting prejudice other than the potential for increased liability, and in light of the fact that the basic claims against the Officer remain the same except for the potential of being found individually responsible, the Court grants plaintiff's motion to amend the Complaint to include a claim of individual liability against Officer Snelders. Plaintiff is Ordered to file his Second Amended Complaint within 10 days of this Order.

## CONCLUSION

Accordingly, defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted in favor of defendants on: (1) the dismissal of the false arrest and false imprisonment claims; and (2) the dismissal of the state law negligence claim.

Defendants' motion to dismiss the federal and state law claims of negligent hiring, retention, training, and supervision is denied as moot. Defendants' motion for summary judgment is denied and plaintiff allowed to proceed on: (1) his claim of excessive force; (2) his state law claims of assault and battery; and (3) his claims against Officers Snelders and Knatz in their official capacities.

Insofar as qualified immunity has been urged as a defense to the claims, summary judgment is appropriate on defendants' qualified immunity defense insofar as it relates to all claims except for the assault and battery and excessive force claims, and the claims against the officers in their official capacities.

The Clerk is directed to mail copies of this Memorandum and Order to the parties.

**SO ORDERED.**

Dated: Brooklyn, New York
April 28, 2008

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York