```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK


------------------------------X
                              :
THOMAS HARTMAN,               :
                              :       04-CV-1784 (CLP)
            Plaintiff.        :
                              :       June 22, 2010
                              :
        V.                    :       Brooklyn, New York
                              :
COUNTY OF NASSAU,             :
et al.,                       :
            Defendant.        :
------------------------------X


        TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
          BEFORE THE HONORABLE CHERYL L. POLLAK
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:         DANIEL J. HANSEN, ESQ.
                           HARVEY WEITZ, ESQ.




For the Defendant:         DONNA A. NAPOLITANO, ESQ.




Audio Operator:



Court Transcriber:         ARIA TRANSCRIPTIONS
                           c/o Elizabeth Barron
                           375 Salt Point Turnpike #5D
                           Poughkeepsie, NY 12603
                           (215) 767-7700



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
 1              THE CLERK:  This is the matter of Hartman v.
 2   Snelders, docket number 04-CV-1784.
 3              Counsel, please state your appearances for the
 4   record.
 5              MR. HANSEN:  Your Honor, it's Daniel J. Hansen, H-
 6   a-n-s-e-n, attorney of record for the plaintiff.  I'm here
 7   also with Harvey Weitz, and he'll introduce himself.
 8              MR. WEITZ:  Harvey Weitz --
 9              THE COURT:  Good afternoon.
10              MR. WEITZ:  -- spelled W-e-i-t-z, trial counsel
11   for the plaintiff.
12              MS. NAPOLITANO:  Good afternoon, Your Honor.
13   Donna Napolitano, Deputy County Attorney at the Nassau
14   County Attorney's Office, attorney for Officer Snelders.
15              THE COURT:  Okay.  The reason I asked for this
16   conference is I received a series of letters from both of
17   you relating to problems with the settlement.
18              Mr. Hansen or Mr. Weitz, do you want to just sort
19   of summarize where we're at at this point?
20              MR. WEITZ:  Mr. Hansen will.
21              MR. HANSEN:  Your Honor, at this point in time,
22   we've got advice from the county attorney that the case is
23   calendared for, I think, July 12th, for the legislative
24   committee and then July 19th, I think, for the full
25   legislature.  We had been made promises in the past for
```

1   months now that we were going to get paid, and that's the
2   reason that we sought the Court's intervention by way of my
3   letter on June 7th, with the initial filing, having been
4   first made aware of this settlement being contingent upon
5   the approval of the legislature.
6            We were told that by the county attorney himself
7   and his executive assistant, Mr. Lipman (ph), that there was
8   essentially nothing that could be done because the county
9   attorney did not control the settlement and that there was
10  nothing that could be done with -- in connection with the
11  presiding officer of the legislature, Peter Schmidt (ph), to
12  either make him act or to have him approve the settlement
13  that we were told was unconditional, did not require any
14  approval and, essentially, that the county attorney already
15  had whatever authority that it needed as of March 12th, when
16  I insisted upon that written representation from Ms. Toscano
17  by way of a letter.
18           And at that point in time, we entered into
19  settlement negotiations and really put the case on hold
20  because of that.  I was reluctant to have the settlement
21  negotiations with the county attorney absent the express and
22  unequivocal representation that they had the actual
23  authority to resolve the matter, and once I received that
24  really three times, in two letters and also in the
25  settlement agreement, we advised the Court.

1          Then subsequently, after not getting paid, we were
2    advised, well, it has to be put on the legislative calendar
3    by somebody at the county that's not the county attorney,
4    and they really have no influence over this individual, Mr.
5    Schmidt, and God knows when you'll get paid because nobody
6    knows when this presiding officer decides to calendar
7    things.  We were left essentially in limbo, being told that,
8    essentially, Mr. Schmidt, when he gets to it, he gets to it,
9    and there's nothing that anybody can do to make him act.
10         At that point, I advised the county attorney it
11   didn't seem like they -- they didn't have authority for
12   anything, despite their three times representations, and
13   that we wanted to move forward with the entry of a judgment,
14   and that we didn't think that the county attorney who was
15   supposed to be representing Mr. Snelders were really acting
16   in his best interests by not getting their political players
17   together, like they were supposed to, so we're here today.
18         But now we're told that it's going to be on the
19   calendar for July 12th, which we're not too sure if it is.
20   And the other concern that we have is if it is, will the
21   county legislature approve it or will they even have a
22   quorum?  One of our concerns is that we've been advised that
23   they may not even have a quorum on the 12th, and that's the
24   reason that it was scheduled for the 12th, as opposed to
25   yesterday, when the full legislature met, and they decided

1  still not to put it on the calendar, even though they knew
2  what was transpiring with the Court by way of the letters.
3              THE COURT:  Okay.
4              MR. HANSEN:  And then my further concern is, even
5  though -- even if it's on for July 12th, now we're four or
6  five months after the verdict, six months after the verdict.
7  The question is, well, when do we get paid from there?  I
8  don't know if Ms. Napolitano could answer that but what
9  happens is, in my dealings with the county attorney, they
10 tell us it's another branch of the government and they have
11 no control over it.  And that's why we're back and wanting
12 to enter judgment against the officer.
13             And in the conversation I had with the county
14 attorney about that, he says, look, you'll enter judgment
15 and you'll come up short, despite the representations made
16 in the courtroom during the trial that they would indemnify
17 him.  Then I'm told, well, I'll end up short and that
18 there's nothing much to be done.
19             THE COURT:  I'm sorry, Mr. Hansen, if what I
20 understand you to be saying now is that if you push to have
21 the judgment entered, the county will withdraw its
22 representation made before this Court that it was going to
23 indemnify Mr. Snelders?  Is that what you're saying?
24             MR. HANSEN:  Mr. Giampoli (ph) himself told me
25 that he would indemnify him only to the extent that it was

1  able to collect from him.  So what Mr. Giampoli advised me
2  expressly -- he says, look, if you're able to enter for
3  fifteen million dollars, you'll probably end up fourteen
4  million dollars short, and we'll indemnify him only to what
5  you collect.  Then I said, the next thing I'll have to is
6  you'll indemnify and I'll have to collect again.
7              Essentially, they want me to get paid in
8  instalments, somehow, despite telling the Court -- because I
9  made a very specific point about this with the county
10 attorney present and with Mr. Swenson, probably not trusting
11 enough, but saying my concern is that -- who's going to pay
12 this?  And it was very expressly made clear by the county
13 attorney office and the trial counsel that they would pay
14 for this.  Then I speak with the county attorney himself,
15 the number one guy in charge, and he tells me something
16 else.
17             And at this point in time, Your Honor, we're at a
18 loss on how to proceed.  You know, we're told it's going to
19 be on for the 12th, for committee, and then the 19th for the
20 full legislature.  We're not told when it's going to get
21 paid.  The Court is told this but we were told something
22 else also on March 12th expressly.  And the Court is advised
23 that the case is settled by the county attorney, and it
24 turns out that the county attorney didn't have or may not
25 have had the authority -- we don't know, because Ms. Toscano

1 has since left the office.
2     And then we get these letters from the county
3 attorney saying, we have the authority but we don't have
4 authority because the authority -- we have authority for
5 $100,000 for a case we settled for fifteen million, and it
6 doesn't make any sense. We're going in circles.
7     THE COURT: All right, Mr. Hansen, thank you.
8     Ms. Napolitano?
9     MS. NAPOLITANO: Yes, Your Honor. First, I'd like
10 to clear up some of the inaccuracies of Mr. Hansen's
11 argument. One, we had full authority to settle this case
12 for fifteen million dollars from the county executive. The
13 fact remains, and it was made very, very, very clear to Mr.
14 Hansen on any number of occasions that any settlement over
15 $100,000 had to go to the legislature. That didn't mean we
16 didn't have authority to settle, it meant that anything over
17 $100,000 is paid out of a different account, which we don't
18 -- which has to be approved by the legislature.
19     THE COURT: Is that stated --
20     MS. NAPOLITANO: In this case --
21     THE COURT: I'm sorry, is that stated in the
22 settlement agreement?
23     MS. NAPOLITANO: Is it -- I don't believe it's
24 stated in the settlement agreement. There's no reason for
25 it to be stated in the settlement agreement. That's

```
 1   something that was explicitly explained to Mr. Hansen, not
 2   only by former Deputy County Attorney Toscano, but also by
 3   the executive members of the county attorney's office.
 4            Now, the fifteen-million-dollar settlement, they
 5   have to bond it, and that's what the legislature has to
 6   approve, a bonding resolution.  The county attorney himself
 7   spoke to the majority counsel for the presiding officer and
 8   requested that the case be put on the June calendar.  The
 9   presiding officer said he didn't want it on the June
10   calendar, he wanted it on the July calendar.  I don't know
11   why he said that.  I wasn't privy to that conversation.
12            It is now on the July calendar.  I don't know what
13   Mr. Hansen is talking about with regard to quorum.  On July
14   12$^{th}$, it goes before two committees, the rules committee and
15   the finance committee.  When they approve it, it has to go
16   before the full leg., and it's going before the full leg. on
17   July 19$^{th}$.  So I don't --
18            THE COURT:  Let me ask you something.
19            MS. NAPOLITANO:  I don't know what he's talking
20   about.
21            THE COURT:  Can I ask you a question?
22            MS. NAPOLITANO:  Certainly.
23            THE COURT:  What if the rules committee or the
24   finance committee or both says, no, we don't think so?
25            MS. NAPOLITANO:  Well, I imagine that that could
```

1   happen.  In this case, I know that it won't happen, because
2   I know that the -- in order to get authority to settle this
3   case, the authority had to come from the county executive.
4   And there's no way that we would have been able to settle
5   the case without that authority.  And so having -- having
6   gotten the authority from the county executive to settle the
7   case, it's a matter of having it put before -- you know, our
8   charter, our requirement is that, in a case over $100,000,
9   the settlement gets approved by the legislature.
10              THE COURT:  I understand that.  Of course, you
11  know, we've tried to settle this case for many, many years,
12  probably before you even came on board.  And that was the
13  major hurdle to settling the case, was that the limit was
14  $100,000.  So, frankly, I was stunned when I heard that the
15  case had settled, because it had been made explicitly clear
16  to me by all of the county representatives that there was no
17  way the case could settle without legislative approval.
18              So I assumed, when I took the case off the docket
19  and closed it, that that authority had been given.  So I'm a
20  little distressed to hear that six months later, we're
21  really in no better position than we were before the trial
22  even started.  So I'm very confused as to what it means when
23  you say you had authority to settle the case.
24              And, frankly, you know, Mr. Hansen is concerned
25  about what -- you know, what remedy -- I have a very clear

1  remedy, and that is that I'll enforce the agreement and
2  impose 9% interest pursuant to New York -- New York's law,
3  until you pay it, because there's nothing in the agreement
4  -- and that's why I asked you.  There's nothing in the
5  agreement that says that it's unenforceable if you don't get
6  the legislature's approval.
7           So I am really very concerned.  Obviously, if the
8  legislature approves the bonding measure and this goes
9  forward expeditiously, we don't have a problem.  But I'm
10 concerned that you don't have the ability to force the
11 committee to consider the settlement, you don't have
12 authority to force the legislature to consider the
13 settlement.
14          And, frankly, I have another concern on top of all
15 of that, which is even if it gets all through that, how long
16 is it going to take until Mr. Hansen gets paid?  Is it going
17 to be another 90 days thereafter or more?  So I feel like,
18 frankly, the county is playing a little fast and loose here.
19
20          You know, I leave it up to plaintiff's counsel,
21 what they want to do, but I'm very much concerned that I
22 have a settlement agreement in which it's represented that
23 the county has authority to settle on behalf of Officer
24 Snelders, and I take all of the motions, which we had
25 started to work on, including the request for attorney's

1  fees, off the docket, and now I'm told it could be, you
2  know, another 120 or even longer days until Mr. Hansen sees
3  money for his client.
4            MS. NAPOLITANO:  Well, Judge, you're being told
5  that by Mr. Hansen, who has absolutely -- I have no idea
6  where he got that information.
7            THE COURT:  Well, are you representing --
8            MS. NAPOLITANO:  The case is on the legislative
9  calendar for July 12th, and I will tell you that it would not
10 have been put on the calendar if it was not anticipated to
11 be approved.  The presiding officer would have never put --
12 he's the only one who has the authority to put anything on
13 the legislative calendar.  It would not have gone on the
14 calendar if it wasn't going to be approved.
15           And I can tell you that from experience, having
16 spent the last six months trying to put a settlement on the
17 calendar that he continued to say he would not approve.  It
18 was only until he agreed to approve the settlement that he
19 actually put it on the calendar, and it's now since been
20 approved.
21           So, I mean, I'm not really sure what kind of --
22 what Mr. Hansen or the Court is looking for, other than the
23 fact that it's on the July 12th calendar and it was put there
24 by the presiding officer.  He put it there.  He's the only
25 one who has the power to do that.

1          MR. HANSEN:  Your Honor, you're being told two
2   different things.  You're being told on the one hand that
3   the county attorney has no sway or say over the county
4   legislature because you were just told that he was asked to
5   put it on the June calendar in light of what was going on
6   and he said, no, I'm not going to do it, let me wait another
7   month or so until I feel like doing it.  We don't know if
8   they're going to have a quorum, we don't know how they're
9   going to act on this.
10         MS. NAPOLITANO:  Mr. Hansen, you're making
11  accusations that you have absolutely no basis to make.  The
12  county attorney speaks to the presiding officer with regard
13  to all settlements to put it on the calendar.  It is only --
14  we had authority to settle this case from the county
15  executive in March when we settled the case.
16         In order to have the bond resolution approved, it
17  has to be approved by the county legislature.  Only the
18  presiding officer has the authority to put a case on their
19  calendar.  He has since put it on the calendar on July 12th.
20  All of the paperwork necessary for that -- for it to get on
21  to that calendar was submitted on April 14th.
22         MR. HANSEN:  Your Honor, we still haven't gotten
23  any assurances as to when he's getting paid and I think
24  what's happening is there's no incentive for the county to
25  do what they have to do in terms of making sure it gets

```
 1  paid, and that's why they missed the 90-day deadline.  And
 2  that's also why the presiding officer, despite, I guess,
 3  what's been represented to you today, the encouragement of
 4  the county attorney to calendar it for June simply decided
 5  not to.
 6              MS. NAPOLITANO:  Again, Mr. Hansen, my -- my
 7  incentive to put it on the calendar or to get it approved is
 8  four million dollars plus attorney fees.  That's a very
 9  large incentment (sic) that we have.  So to say that we have
10  no incentive at all to push this -- we've made every effort
11  to push this.  We've gotten them the paperwork on April 14th.
12  That they put it on the calendar three months later is
13  really quite amazing.  But it's there, it's on the calendar.
14  It will be approved by the committees and then it gets
15  approved by the full leg.
16              THE COURT:  What do you mean --
17              MS. NAPOLITANO:  I don't know what you're talking
18  about in terms of not having a quorum on the 12th.
19              THE COURT:  Ms. Napolitano, when you said it's
20  amazing that it made it on the calendar three months later,
21  what do you mean by that?
22              MS. NAPOLITANO:  Because it took six months for me
23  to get a settlement on the calendar.
24              THE COURT:  Well, if you knew in March -- and I
25  know you didn't sign the settlement agreement.  But if you
```

1  knew in March that it was going to take up to six months to
2  get it on to the legislative calendar, why is there a 90-day
3  provision in the settlement agreement?  I mean, that makes
4  no sense to me, either.
5              MS. NAPOLITANO:  The settlement provision is based
6  on the CPLR, in that when a municipality is the settling
7  defendant, the CPLR allows for 90 days no interest, but
8  then --
9              THE COURT:  No, I understand that.
10             MS. NAPOLITANO:  Okay.  That's why it's in there.
11             THE COURT:  I'm fully aware -- I'm fully aware of
12 that provision, having settled countless cases with the City
13 of New York.  My point is, you knew at the time that the
14 settlement was signed that there was no way it was going to
15 be paid in 90 days, so why even put that --
16             MS. NAPOLITANO:  I don't think that's correct,
17 Your Honor.
18             THE COURT:  Excuse me?
19             MS. NAPOLITANO:  I don't think that's correct.  I
20 mean, I wasn't part of this settlement.  I wasn't involved
21 in the settlement negotiations or any of the discussions
22 with Mr. Hansen prior to -- prior to his letter on June 7th.
23 But I know, in speaking to the county attorney and Mr.
24 Lipman, that this was -- this settlement was taken to the
25 county executive and approved by the county executive, and

```
 1  we don't generally do that.  We don't generally have our
 2  settlements approved by the county executive.
 3              So there was no reason to believe that this case
 4  was not going to be put on to the legislative calendar as
 5  soon as possible, especially given that we prepared the
 6  documents and got it to them on April 14th.
 7              THE COURT:  Well, let me -- let me make a
 8  suggestion, Mr. Hansen.
 9              MR. HANSEN:  Yes, Your Honor.
10              THE COURT:  My suggestion is this:  Why don't we
11  wait and see what the county legislature does?  And if it
12  doesn't come before the committee or it doesn't come before
13  the legislature, you can move to enforce the settlement.
14  And it seems to me that, in accordance with the terms of the
15  agreement, the interest was held in abeyance for that 90-day
16  period but it's running now.  And by my calculation, it
17  probably comes to about a million dollars a year, so that
18  gives them an incentive.
19              MR. HANSEN:  Actually, Your Honor, they have a
20  bigger incentive, because CPLR 50003-A says, if payment is
21  not made within the statutory time, the interest begins to
22  run from the date that the papers were tendered, which is
23  back in March.  So it would cost the county probably another
24  $300,000 to $500,000 on top of the amount.
25              Your Honor, if I could suggest, one way to
```

1   incentize (ph) the county would be maybe to issue, based
2   upon today's representations, in a letter motion, maybe
3   issue a conditional order saying that judgment will be
4   entered if it's not -- if the settlement is not paid by,
5   say, August 15th.
6              THE COURT:  Well, I don't want to do that yet.  I
7   want to see what they -- what they do.  But I think Ms.
8   Napolitano has a good sense of where the Court is coming
9   from at this point, and hopefully that will be made apparent
10  to everyone who needs to know.  My hope is that they will do
11  the right thing and we won't have to go there on this.
12             I do -- I do want to have another conference.  I
13  think you should report to me after the July 12th committee
14  meeting and then again, presuming that all goes well and it
15  goes before the legislature, I want another report
16  thereafter.
17             And at that report, Ms. Napolitano, I kind of want
18  to get a sense from you as to when we're going to get the
19  payment.
20             MS. NAPOLITANO:  That's fair enough, Judge, and I
21  can certainly do that.
22             THE COURT:  So my law clerk is going to give you a
23  date after the 12th, like --
24             I don't know what the week looks like, Mike,
25  but --

```
 1              THE CLERK:  July 13th at 4:00 p.m.
 2              MS. NAPOLITANO:  I'm sorry, I cannot hear you.
 3              THE CLERK:  July 13th at 4:00 p.m.
 4              MS. NAPOLITANO:  Sure.
 5              MR. HANSEN:  Thank you, Michael.
 6              THE COURT:  Okay.  We will speak to you then and,
 7   hopefully, all will go smoothly.
 8              MR. HANSEN:  Thank you for hearing us today, Your
 9   Honor.
10              MS. NAPOLITANO:  Thank you, Your Honor.
11              MR. HANSEN:  Thank you, Judge.
12              THE COURT:  Thank you.
13                       * * * * * * * * *
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18      I certify that the foregoing is a correct transcript
19   from the electronic sound recording of the proceedings in
20   the above-entitled matter.
21
22
23   [signature]
24
25   ELIZABETH BARRON                         August 5, 2010
```